ADAM J. BLAIR, APPELLEE, V. ESTATE OF JOHN M. WILLMAN ET AL., APPELLANTS.

FILED FEBRUARY 23, 1921. No. 21343.

1. Limitation of Actions: PART PAYMENT. Voluntary part payment of an existing debt arising upon contract will toll the statute of limitations, and, if the debt is barred by the statute, will revive it. Rev. St. 1913, sec. 7579; *Rolfe v. Pilloud*, 16 Neb. 21; *Ebersole v. Omaha Nat. Bank*, 71 Neb. 778.

2. ———: ———. Where there is an uninterrupted continuity of employment extending over many years, under an oral contract which fixes the rate of compensation per year, but not the time of payment or the duration of the employment, and the employer admits a total sum due on the contract, any payment made by him to the employee, in the absence of evidence to the contrary, will be presumed to have been made upon the gross sum due, and not upon the compensation for any of the several years.

3. Executors and Administrators: CLAIMS: OBJECTIONS: WITHDRAWAL. Where objections are filed by the heirs to a claim against an estate and other objections are filed thereto by the executrix, it is not prejudicial error for the executrix to withdraw her objections during the trial, the objections of the heirs still remaining.

4. Appeal: INCOMPETENT EVIDENCE. A party cannot predicate error on the admission of incompetent evidence elicited upon his own cross-examination, where he makes no objection or motion to strike.

APPEAL from the district court for Otoe county: JAMES T. BEGLEY, JUDGE. Affirmed.

L. F. Jackson, D. W. Livingston and J. J. Ledwith, for appellants.

W. F. Moran, contra.

CAIN, C.

On April 6, 1917, Adam J. Blair, the appellee, filed his claim against the estate of John M. Willman, deceased, for a balance of $7,200, and interest, due for work and labor performed by him for the deceased from January 1, 1881, to January 1, 1917, a period of 36 years, under an oral contract stipulating that he was to receive wages therefor at the rate of $300 a year, or $25 a month. In his claim he acknowledged the payment of $100 a year for the entire period and asked judgment for the remaining $200 a year, and interest, amounting in all to $15,920. There were two other items in the claim, relating to moneys belonging to the claimant and received by the deceased; but, as they were disallowed and are not complained of here, they are immaterial.

The claim here involved relates solely to compensation for work and labor. To this claim three of the adult chil-

Blair v. Estate of Willman.

dren of the deceased filed objections, setting forth with great particularity that the claim for all wages accruing before January 1, 1913, was barred by the statute of limitations. Though the claim filed was for a single amount covering the total of all the years of labor, the answer pleaded the bar of the statute of limitations to each of the years severally. Elizabeth A. Willman, widow of the deceased and sister of the claimant, was the executrix of the estate, and merely filed a general objection, which she withdrew upon the trial in the district court. On appeal to the district court, a trial was had to a jury, which resulted in a verdict in plaintiff's favor for $18,837.36. Upon the hearing of the motion for a new trial, the court overruled the motion on condition that plaintiff file a remittitur of $5,837.36, which was done, and judgment was then entered on the verdict for $13,000. The defendants appeal.

There are 27 separate assignments of error. Of these, assignments 1 to 12, inclusive, relate to the statute of limitations, upon which appellants chiefly relied. Assignments 21 to 25, inclusive, are that the evidence is insufficient to sustain the verdict. The other assignments are with reference to instructions also involving the question of limitations, and that the court erred in permitting the executrix to withdraw her objections to the claim and to testify that it should be allowed, and in the court instructing the jury orally.

With reference to the assignment relating to the oral instruction of the jury, the record shows that, upon appellants' objection to that method of instruction, the court reduced the instruction to writing and read it to the jury. And we perceive no error in this.

It is true that the executrix withdrew her objections to the claim during the trial, and that she testified that the claim should be allowed in the sum of $18,000, at least. We know of no rule preventing the executrix from withdrawing her objections to the claim, and it could have had no prejudicial effect, for the reason that the objections of the three heirs still remained and the trial proceeded.

105 Neb.—47

An examination of the record discloses that the testimony of the executrix that the claim should be allowed was elicited upon appellants' own cross-examination, without objection or motion to strike. It is obvious that appellants cannot avail themselves of an error of their own.

We now come to the chief question in the case: It is whether the claim for all the years next before January 1, 1913, is barred by the statute of limitations. Appellants urge this claim with persistence and vigor. Appellee contends that a partial payment of the indebtedness was made by the deceased in each of the 36 years, and that thereby the statute was tolled, and that, if the bar of the statute was ever complete, the debt was revived by partial payments thereof proved to have been made after January 10, 1912. Decision of this question requires an examination of the evidence, which is without substantial dispute. The evidence shows that Adam J. Blair, the plaintiff, was the brother of the widow of the deceased, and was 64 years of age at the time of the trial, and was never married; that he had lived nearly all of his life in the family of the deceased; that about January 1, 1881, plaintiff and the deceased entered into an oral contract of employment by which the plaintiff was to receive wages for his work at the rate of $300 a year, or $25 a month. No term of employment or time of payment was provided by the contract, and it related solely to the fact of employment and the wages to be paid. From the time of making the contract until the first of January, 1917, the plaintiff worked for the deceased at farm labor, and lived in his home continuously, with the exception of two visits to Oklahoma of one week each, and a visit of three weeks in the east. With the exception of these five weeks the plaintiff worked continuously for the deceased at the same kind of labor for 36 successive years. There was no change in the kind of employment and no interruption of its continuity. About 1866 John M. Willman, the deceased, bought 80 acres of land one and one-half miles from Nebraska City, which continued to be his home from that time until his

death. During that period he acquired additional tracts of land until he had over 800 acres. Complaint is made of the admission of the evidence of these successive purchases of land, but, as it was chiefly introduced to show that plaintiff was not paid in full because the deceased was short of funds on account of these purchases, we think it was proper. Mr. Willman was chiefly occupied by his business transactions, and the management and operation of the farm was in the hands of the plaintiff. The deceased never denied the validity of plaintiff's claim, but, on the contrary, admitted it. Miss Edna Willman, a daughter of the deceased, about 49 years of age, who had lived in her father's family all her life, and who assisted him in his business, testified to a conversation she had with her father, in the presence of her mother, on May 30, 1908, when her father was trying to borrow money from her on his note. The witness testified: "He offered me a note, and I says I didn't want to receive it for what he gave it to me. I said, 'Why don't you pay Ad (meaning plaintiff) before making any more debts?' 'Well,' he said, 'Ad has been here for over 26 years and $25 a month amounts up like hell.' He said, 'I owe Ad close to $7,000. I have to sell a piece of land to pay him.'" This testimony of Miss Willman is corroborated by that of her mother, and is undisputed. Miss Willman further testified that, after that date, plaintiff continued to work there and got about one-half of his wages from 1908 to 1912, which was paid by check. The evidence also shows that John M. Willman consulted a lawyer about the means to prevent plaintiff's claim from becoming outlawed, and was advised that part payments would prevent it. On January 10, 1912, the house of deceased burned, and all canceled checks issued previous to that time were destroyed. Before that time, Miss Willman testified that her father would pay plaintiff money when plaintiff would strike him for a settlement; and also testified that her father said one reason he did not settle with plaintiff was that the plaintiff might leave if he did so, and that he was hard up for money and did

not have the money. Several checks were produced that were given to the plaintiff by the deceased after 1912 and up to January, 1917. The evidence of part payments previous to 1912 is not as satisfactory as it might be, but it nevertheless shows payments made at intervals by the deceased; and from 1912 to 1917 the evidence is much clearer of such payments. It is altogether probable that small payments were made several times each year, since it was necessary that the plaintiff have some money with which to buy clothing. In view of the uninterrupted continuity of the employment, the relation of the plaintiff to the deceased, and the measures taken by the deceased to prevent the plaintiff's claim from becoming barred, and the unqualified admission of the deceased of a debt amounting to $7,000 on May 30, 1908, we are convinced that whatever payments were made were upon the entire indebtedness. Both plaintiff and the deceased considered it a single debt arising from a single employment.

We do not think that any part of the indebtedness became barred; but, even if it were, the undisputed and substantial payments made revived the debt. Rev. St. 1913, sec. 7579; Rolfe v. Pilloud, 16 Neb. 21; Ebersole v. Omaha Nat. Bank, 71 Neb. 778; 25 Cyc. 1368. The question of whether voluntary part payments upon the debt had been made was submitted to the jury by the court under instruction No. 6, which is assailed by appellants. We have examined this instruction and think it fairly submitted the question to the jury. We also think that the finding of the jury is amply sustained by the evidence.

Careful examination of the entire record leads us to the conclusion that there is no error. On December 3, 1920, this court made an order staying all other proceedings in the county court until the further order of this court.

We recommend that the judgment of the district court be affirmed, and that the order of this court of December 3, 1920, be vacated.

PER CURIAM. For the reasons stated in the foregoing opinion, the judgment of the district court is affirmed, and the order of this court herein of December 3, 1920, is vacated, and this opinion is adopted by and made the opinion of the court.

AFFIRMED.