ROCCO H. CASTELLANO, ALSO KNOWN AS ROCK H. CASTELLANO, APPELLEE, V. SAMUEL BITKOWER, APPELLANT.
346 N.W.2d 249

Filed March 23, 1984. No. 82-806.

Ronald Rosenberg of Rosenberg, Gibson & Taute, for appellant.

Joseph J. Cariotto, for appellee.

BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

Samuel Bitkower appeals a judgment in the Lancaster County District Court on a verdict in favor of Rocco Castellano for $53,000, as a result of an action on two lost promissory notes. We reverse and remand for a new trial.

On September 17, 1980, Castellano filed his petition alleging the following: On August 19, 1975, Bitkower made two promissory notes payable to Castellano on demand; one note was for $26,000, while the other was for $30,000; the notes were lost or stolen in December 1975; Bitkower had made payments of $3,000, namely, $1,000 paid on July 27, 1978, and $2,000 paid on October 8, 1978; and Castellano was the owner and holder of the notes. Castellano sought a judgment for $53,000, the unpaid balance on the lost notes. (Why the petition contained but one cause of action for two promissory notes is unexplained. Such imprecise pleading causes no small problem in resolving the questions presented in this appeal.)

Bitkower's amended answer generally denied Castellano's allegations, and raised the statute of limitations as an affirmative defense.

In 1960 Castellano met Bitkower, a diamond salesman. During 1968, Castellano occasionally bought diamonds from Bitkower, but did not buy any Bitkower diamonds after 1968.

Between May 10, 1968, and February 20, 1974, Castellano gave Bitkower 19 checks, for a total of $37,662.75. Castellano claimed those payments were loans to Bitkower, but Bitkower denied any loan whatsoever. Castellano acknowledged that every loan represented by the checks had been repaid at the time of trial, but also acknowledged that the loans reflected by the checks were part of the "basis for support of [his] claim for" the notes in question.

Castellano testified that it "could have been," and he "believed" it was, in October, November, or December 1973 when he met with Bitkower in a bar of a Lincoln motel, where Bitkower signed and delivered the two demand notes. Castellano further testified that he "definitely" had the notes in July or August of 1974. (Castellano's petition alleges the notes were executed on August 19, 1975.) The exact reason for the notes is not disclosed in the record, but the notes may have related to some undescribed, previous loan to Bitkower and some obscure diamond transaction.

The two notes were on printed forms supplied by Bitkower. At Bitkower's request, Castellano wrote in the date and amount for each note—one for $26,000 and the other for $30,000. Bitkower told Castellano he would not pay any interest regarding the notes, and then signed the notes.

Castellano put the notes in a safety deposit box at his bank, and later showed the notes to his accountant in 1974. Afterwards, Castellano hid the notes in books in his apartment, and, while he was moving from his apartment, Castellano, on December 3, 1975, discovered the notes were lost.

From various witnesses called by Castellano the testimony established that there were two notes, the notes were seen in 1974 and 1975, Bitkower's signature was recognized, and Castellano was the named payee on the notes.

Castellano claims and testified that Bitkower made two part payments on the debt represented by the lost notes, namely, two checks received by Castellano in 1978. Castellano received the checks in response to his demand on Bitkower for payment on the notes. The first check from Bitkower is dated July 27, 1978, payable to Castellano in the amount of $1,000, and bore the notation "For Loan." The second check is dated October 8, 1978, in the amount of $2,000, and also bore the notation "For Loan."

Castellano testified that he applied the proceeds from the checks as a credit on "one note."

Bitkower testified that he never borrowed money from Castellano and, in fact, Bitkower loaned money to Castellano, as reflected by the two Bitkower checks in 1978.

Although Bitkower tendered an instruction requiring "clear, convincing, and satisfactory" evidence to prove the lost notes, the trial court gave an instruction which required proof by a preponderance of evidence. Bitkower also tendered, and the court gave, an instruction that Castellano must prove the part payments by a preponderance of evidence.

The jury returned a $53,000 verdict for Castellano.

In his appeal Bitkower complains about the trial court's instructing the jury in terms of preponderance of the evidence regarding the lost notes, rather than evidence which was "clear, convincing, and satisfactory"; claims that the trial court erred in not sustaining Bitkower's motion for a directed verdict at the conclusion of all the evidence; and alleges error in the reception of certain checks as evidence.

Neb. U.C.C. § 3-804 (Reissue 1980) provides in part: "The owner of an instrument which is lost, whether by destruction, theft or otherwise, may maintain an action in his own name and recover from any party liable thereon upon due proof of his ownership, the facts which prevent his production of the instrument and its terms."

"It is generally the rule that a party seeking to recover upon a lost or stolen written instrument has the burden of proving the former existence, execution, delivery, loss, and contents of the instrument relied upon by clear, satisfactory, and convincing evidence." *Kuenzli v. Kuenzli*, 150 Neb. 855, 858, 36 N.W.2d 247, 249 (1949).

Combining the requirements of § 3-804 with the quantum of proof required under *Kuenzli v. Kuenzli*, *supra*, we hold that one seeking enforcement of a

lost promissory note must by clear and convincing evidence establish (1) ownership of the instrument, (2) an explanation for absence or loss of the instrument, and (3) the terms of the instrument.

We are aware that the word *satisfactory* used in *Kuenzli* has been deleted in describing the proof required for recovery on a lost promissory note. Our discussion later in this opinion concerning clear and convincing evidence will supply the reason for such deletion.

An action on a demand promissory note must be commenced within 5 years of the date on which the demand note is issued. See, Neb. Rev. Stat. § 25-205 (Reissue 1979); Neb. U.C.C. § 3-122(1)(b) (Reissue 1980); *Degmetich v. Beranek*, 188 Neb. 659, 199 N.W.2d 8 (1972).

Before the statute of limitations has run, a voluntary part payment of principal interrupts, arrests, and tolls the statute of limitations. See, *Kienke v. Hudson*, 126 Neb. 551, 253 N.W. 687 (1934); *Beacom v. Daley*, 164 Neb. 120, 81 N.W.2d 907 (1957); *Pick v. Pick*, 184 Neb. 716, 171 N.W.2d 766 (1969). After a debt is barred by the statute of limitations, a voluntary payment of principal revives the debt. See, *Rolfe v. Pilloud*, 16 Neb. 21, 19 N.W. 970 (1884); *Ebersole v. Omaha National Bank*, 71 Neb. 778, 99 N.W. 664 (1904); *Blair v. Estate of Willman*, 105 Neb. 735, 181 N.W. 615 (1921). The theory underlying the effect of part payment on a debt is a voluntary acknowledgment of the debt which starts the statute of limitations running anew from the date of the payment. See, *T. S. McShane Co., Inc. v. Dominion Constr. Co.*, 203 Neb. 318, 278 N.W.2d 596 (1979); *Pick v. Pick, supra*; 54 C.J.S. *Limitations of Actions* §§ 321, 333 (1948).

In order to remove the bar to recovery imposed by the statute of limitations, a part payment must be made and accepted as a payment on the particular debt in question; must be made under circumstances which warrant a clear inference that the

debtor recognizes and acknowledges the entire debt as the debtor's existing liability; and must demonstrate the debtor's willingness, or at least his obligation, to pay the balance of the debt. The payment must be distinct, unequivocal, and without any condition or qualification. The debtor must definitely point out the debt or obligation on which the payment is made and clearly evidence an intention to discharge the debt in part as a result of the part payment. See *In re Estate of Anderson*, 148 Neb. 436, 27 N.W.2d 632 (1947).

There is some apparent contradiction in Castellano's account of the date on which Bitkower executed the notes. On the one hand, Castellano testified that the notes were signed late in 1973, perhaps in October, November, or December of that year. If the notes were signed by Bitkower in 1973, Castellano had to file suit before the day and month in 1978 corresponding with the date of execution in 1973. On the other hand, if the notes were signed by Bitkower on August 19, 1975, as alleged in the petition, Castellano had to file suit before August 18, 1980. Under either version regarding the execution of the notes and without the beneficial effect of a part payment in 1978, Castellano's claims on the notes were barred at the time when suit was filed on September 17, 1980. See Neb. Rev. Stat. § 25-216 (Reissue 1979).

" 'If the petition in an action sets forth facts which show upon its face that it is barred by statute, and in avoidance thereof further facts are alleged to remove the bar of the statute, all of which are positively denied by the answer, together with the added allegations that the cause of action is barred by the statute of limitations, the plaintiff cannot recover without first establishing the facts so alleged in avoidance.' " *In re Estate of Anderson, supra* at 438, 27 N.W.2d at 634. Cf. *S.I.D. No. 145 v. Nye, ante* p. 354, 343 N.W.2d 753 (1984).

Under the rule set forth in *In re Estate of Anderson, supra*, in order to remove the bar of the statute

of limitations, evidence regarding a part payment must be "clear and positive," while under *Johnson v. Ghost*, 11 Neb. 414, 8 N.W. 391 (1881), the evidence must be "clear and satisfactory."

"Clear and positive" evidence has been held to have the same meaning as clear and convincing evidence. See *People v. Reynolds*, 55 Cal. App. 3d 357, 127 Cal. Rptr. 561 (1976). "Clear and satisfactory" evidence means clear and convincing evidence. See *Cont. Sheep Co. v. Woodhouse*, 71 Wyo. 194, 256 P.2d 97 (1953).

Clear and convincing evidence has been held to mean more than a preponderance of evidence but less than evidence beyond a reasonable doubt. See, *In re Henderson*, 199 N.W.2d 111 (Iowa 1972); *Cromwell v. Hosbrook*, 81 S.D. 324, 134 N.W.2d 777 (1965); *State v. Commeau*, 409 A.2d 247 (Me. 1979); *Welton v. Gallagher*, 2 Hawaii App. 242, 630 P.2d 1077 (1981); *Aiello v. Knoll Golf Club*, 64 N.J. Super. 156, 165 A.2d 531 (1960); *Berkey v. Delia*, 287 Md. 302, 413 A.2d 170 (1980). It would undoubtedly cause total confusion to instruct a jury that an appropriate claim must be proved by more than a preponderance of evidence, as defined by NJI 2.12, but less than evidence beyond a reasonable doubt, as defined by NJI 14.08. Consequently, we hold that clear and convincing evidence means and is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. See, *Aiello v. Knoll Golf Club*, *supra*; *Hellman v. Kincy*, 632 S.W.2d 216 (Tex. App. 1982); *Matter of C. G.*, 637 P.2d 66 (Okla. 1981); *Middleton v. Johnston*, 221 Va. 797, 273 S.E.2d 800 (1981).

In order to recover on the lost notes, Castellano must by clear and convincing evidence prove his ownership of the notes, provide an explanation for absence or loss of the notes, and establish all the terms of the promissory notes.

Because part payment can result in a debtor's waiver or relinquishment of the defense afforded by

the statute of limitations, the creditor, here Castellano, must prove by clear and convincing evidence that there has been a part payment of the debt in order to enforce a claim barred by the statute of limitations. See *United Trust Corp. v. Burgess*, 175 Misc. 511, 24 N.Y.S.2d 84 (1940).

Regarding Bitkower's claim that the trial court should have sustained his motion for a directed verdict at the conclusion of all evidence, the evidence was disheveled but sufficient to submit all questions to the jury. See *Church of the Holy Spirit v. Bevco, Inc.*, 215 Neb. 299, 338 N.W.2d 601 (1983). Under the circumstances we cannot state that Castellano has not proved his case by clear and convincing evidence—a matter better left to a jury's determination based on all facts, including credibility of witnesses. Cf. *In re Estate of Shirk*, 194 Kan. 424, 399 P.2d 850 (1965).

On the back of each of the Bitkower checks in 1978, there was a notation which Bitkower believes to be a restrictive endorsement. On the check of July 27, 1978, there was the following notation on the back of the check: "(Partial repayment of money loaned to Samuel Bitkower by Mary Castellano) R. H. Castellano." On the October 8, 1978, check for $2,000, there was a similar notation: "Rock Castellano. Partial payment of loan from Sam Bitkower for Mary Castellano." The endorsements are not restrictive endorsements because they do not impose a condition on negotiation, do not prohibit further transfer, do not state any use or benefit of the endorser or of another person, and do not contain terms signifying a purpose of deposit or collection. See, Neb. U.C.C. § 3-205 (Reissue 1980); 11 Am. Jur. 2d *Bills and Notes* § 362 (1963); 2 R. Anderson, Anderson on the Uniform Commercial Code § 3-205:4 (2d ed. 1971). The data or information on the front of the checks was relevant to the question of part payment on the alleged debts and notes. There was no error in admitting the exhibits.

It was error not to instruct the jury on the requirement of clear and convincing evidence to prove the facts necessary for a recovery on the promissory notes in question. Therefore, the judgment of the district court is reversed and this cause is remanded to the district court for a new trial.

REVERSED AND REMANDED
FOR A NEW TRIAL.