Jack B. BUSTER, Appellant,

v.

James R. GALE, Thomas A. Westerhof and Mary E. Westerhof, Appellees.

No. S–5020.

Supreme Court of Alaska.

Jan. 14, 1994.

Hal P. Gazaway, P.C., Anchorage, for appellant.

Susan D. Mack, James T. Stanley, P.C., Anchorage, for appellees.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

RABINOWITZ, Justice.

I. *FACTS AND LOWER COURT PROCEEDINGS*

In June 1984 James Gale, Thomas Westerhof, and Mary Westerhof (Gale and the Westerhofs) executed a deed of trust in favor of Cameron Milliron and M. Jo Milliron (the Millirons), as security for an obligation of $44,000. The signatures of Gale and the Westerhofs were notarized, and the deed of trust was recorded.

Jack Buster (Buster) argues that Gale and the Westerhofs additionally signed a deed of trust note (the note), in which they assumed the $44,000 debt to the Millirons. The Millirons assigned the note to Robert Baines and

Christine Baines (the Baineses) in May 1985. The assignment was certified and recorded.

In his deposition, Robert Baines stated that after Gale and the Westerhofs had defaulted on their payments in September 1986, he "closed the escrow and took possession of the original deed of trust note."[1] Baines also stated in his deposition that he gave the note to Buster in May 1988.

The location of the note after this time is unclear. Buster testified that Robert Baines instituted an action to collect on the note in 1988, and that at that time, Buster had the original note.[2] Buster further testified that he believed that he later accidentally threw the note out "in a frenzy of housecleaning." According to Buster, all three original documents—the deed of trust, the note, and the assignment from the Millirons to the Baineses—were lost.

In May 1988, before moving from Alaska to Paris, France, the Baineses executed general powers of attorney in Buster's favor. Buster further claims that under these general powers of attorney, he assigned the note to himself "as Robert Baines' attorney-in-fact" on January 16, 1990. Buster testified that he wrote this assignment on the back of the original note. Also on January 16, Buster filed a complaint against Gale and the Westerhofs to recover on the note.[3]

In December 1990, Buster met with Gale and Thomas Westerhof to discuss a settlement between the parties. Gale and Westerhof offered Buster $8,000 to settle the dispute. According to Thomas Westerhof's testimony, Buster reached into his briefcase at this point to pull out the note, and discovered that he did not have it. Buster then went home to look for the note, but was unable to find it. No formal settlement was ever reached between Buster, the Westerhofs, and Gale.

Buster states that he signed a second assignment of the note "signed by me for Christine Baines as her power of attorney" on January 23, 1991.[4] During direct examination, Buster testified that he wrote this assignment on the back of the original note. However, during cross-examination, Buster admitted that he had been unable to produce the note at the December 1990 meeting between himself, Gale, and Thomas Westerhof. Buster then stated that he must have written the January 23 assignment on the back of a copy.

In March 1991, Buster listed Robert Baines on his preliminary witness list. Buster then deposed Baines in Anchorage in July 1991. At this deposition, Baines indicated that he then resided in London, England. When questioned about his availability for trial in Alaska in December 1991, Baines responded that he did not anticipate being in Alaska but stated: "[I]f it's necessary, well, we'll—we'll make arrangements."

Three days prior to the commencement of the superior court trial Buster filed a designation of deposition testimony, indicating his intent to use the Robert Baines deposition.[5] At trial, Gale and the Westerhofs objected to the use of the deposition of Robert Baines, claiming that there was no showing that Baines was unavailable. Buster testified that Robert Baines had told him, one month prior to trial, that he would be travelling in North Africa for two or three weeks, and then would be returning to London.

The superior court found that Robert Baines might be an essential witness, and that the record did not adequately reflect Baines' unavailability. The court held that

---

1. The deposition was ruled inadmissible at trial, and this evidentiary ruling is one of the issues in this appeal.

2. Buster testified that this action was dismissed for lack of prosecution.

3. Buster attached a copy of the note to the complaint, but he did not attach a copy of the back of the note, where the endorsement and assignment signatures allegedly were located.

4. Buster testified: "I executed this to correct an oversight in the previous assignment of 1990 where I'd failed to note that Christine Baines was also the holder of this note ... so I executed an assignment of whatever interest she may have also to myself."

5. Buster also deposed Christine Baines at the same time he deposed Robert Baines, and excerpts from the "Christine M. Baines deposition taken July 18, 1991" were included in Buster's designation of deposition testimony.

Robert Baines' deposition would not be admitted, but offered a continuance of the trial: "Probably the best way to handle this would be to close all the discovery except a beefed up deposition, maybe even by phone, of Mr. Baines, although it sounds like somebody wants him to be here. I'd be willing to search for a one-day spot on the trial calendar." Both parties turned down the superior court's suggested continuance.

At trial, Buster sought to admit into evidence a document titled Plaintiff's Trial Exhibit # 1 (Exhibit # 1), which consisted of a copy of what was purported to be the note including the endorsements from the Millirons to the Baineses, and from the Baineses to Buster. Buster testified that at some point after he realized that the original was lost, he wrote "certified to be a true and exact copy of the original" on the copy, and signed his name.

Buster argued that under Alaska Rule of Evidence 1003, he did not have to establish the admissibility of the purported copy of the note and signature page by clear and convincing evidence. Buster further argued that Gale and the Westerhofs had not contested the contents of the note or its original execution in their responses to his requests for admission. The superior court refused to admit the copy.

Gale and Thomas Westerhof testified that they recognized their signatures on the copy, but that they could not remember if the contents of the copy were the same as what they had signed. They testified that they had not retained any copies of the note in their records.[6] Gale and the Westerhofs argued that Buster's claim on the lost note was governed by former AS 45.03.804, that the appropriate standard of proof for that statute

was clear and convincing evidence, and that Buster had failed to meet this burden.[7]

Upon conclusion of the non-jury trial, the superior court entered findings of fact and conclusions of law. The court found that "Jack Buster's testimony is not unworthy of belief, although his testimony lacks corroboration." In its conclusions of law the superior court stated in part: [8]

1. AS 45.03.804 provides the procedure by which the owner of a lost promissory note is to maintain an action to recover on said note.

2. Plaintiff has the burden of establishing ownership of the lost note, and the circumstances surrounding the loss of the note, followed by proving the terms and conditions of the note.

3. The applicable standard of proof to be met by plaintiff pursuant to AS 45.03.804 is the clear and convincing standard.

. . . .

5. Plaintiff has not met his burden of proof and is therefore not the prevailing party in this action.

6. Defendants are entitled to judgment in this action and plaintiff shall take nothing by way of his complaint.

Thereafter a formal judgment was entered dismissing Buster's claim for relief and awarding Gale and the Westerhofs attorney's fees of $4,430.40 and costs of $1,423.78. This appeal followed.

Three questions are presented in this appeal. First, did the superior court err in excluding Buster's purported copy of the note? Second, did the superior court err in precluding Buster's introduction of Robert Baines' deposition into evidence? Third, did the superior court err in holding that Buster

---

6. An attachment to the April 1991 cross-motion for partial summary judgment filed by Gale and the Westerhofs consisted of an identical copy of the note and an endorsement page including all of the endorsements at issue except the assignment of the interest of Christine Baines.

7. Additionally, Gale and the Westerhofs claimed as an affirmative defense that "[Buster] contracted with defendants to accept $8,000.00 in exchange for the original deed of trust note and dismissal of this action." This point was not

argued with much enthusiasm at trial, and is not relevant to the appeal.

8. In its oral opinion the superior court informed counsel for the Westerhofs and Gale that

I've rejected your ownership argument and I've rejected your accord and satisfaction argument, decided simply on the narrow issue that [Buster] fails to meet his clear and convincing burden and therefore obtain the admission of [Exhibit # 1], without which his case fails.

had failed to prove his right to recover on the note?[9]

## II. *DISCUSSION*

### A. *Did the Superior Court Err in Excluding Buster's Exhibit # 1?*

Buster argues that the superior court erred in requiring that he establish the authenticity of Exhibit # 1 by clear and convincing evidence. Buster contends that he produced the proper evidentiary foundation for the admission of the document under Alaska Rules of Evidence 901, 1003, and 1004.

### 1. *Did the Superior Court Err in Holding that the Burden of Proof for Admissibility of Buster's Exhibit # 1 Was Clear And Convincing Evidence?*

■ Exhibit # 1 was alleged to be a true and accurate copy of a lost original. Generally, the original of a document is required to be produced at trial under the so-called "best evidence" rule. *See* 2 *McCormick on Evidence* § 229 (John William Strong ed., 4th ed. 1992).[10] Nonetheless, the Alaska Rules of Evidence establish liberal guidelines for admission of copies. Evidence Rule 1003 states:

> A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it

would be unfair to admit the duplicate in lieu of the original.

Evidence Rule 1004 states in relevant part:

> The original is not required, and other evidence of the contents of a writing ... is admissible if
>
> (a) ... All originals are lost or have been destroyed, unless the proponents in bad faith lost or destroyed them. . . .

Evidence Rule 901 states the general rule for authenticating documents:

> The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. . . .

The basic requirement of authentication was defined as follows in *McQueeney v. Wilmington Trust Co.,* 779 F.2d 916 (3d Cir.1985):

> The burden of proof for authentication [of documents] is slight. "All that is required is a foundation from which the fact-finder could legitimately infer that the evidence is what the proponent claims it to be."

*Id.* at 928 (quoting *In re Japanese Elec. Prod. Antitrust Litig.,* 723 F.2d 238, 285 (3d Cir.1983), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

■ Implicit in the superior court's exclusion of Exhibit # 1 is the assumption that since the authenticity of the copy could not be established by clear and convincing evidence, the document was not admissible. We disagree.[11] The appropriate standard of

---

**9.** This case involves the review of both questions of law and evidentiary proceedings. The appropriate standard of review for questions of law is substitution of judgment. *Langdon v. Champion,* 745 P.2d 1371, 1372 n. 2 (Alaska 1987); *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979). The appropriate standard of review for evidentiary decisions is abuse of discretion. *Dura Corp. v. Harned,* 703 P.2d 396, 409 (Alaska 1985). This court has stated that "[w]e will find that a trial court abused its discretion only 'when we are left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling.' " *Id.* at 409 (quoting *Peter Pan Seafoods, Inc. v. Stepanoff,* 650 P.2d 375, 378–79 (Alaska 1982)).

**10.** Two primary justifications have been advanced for this rule: first, the principle that the original words of a document are the most cer-

tain proof of its terms; and second, the idea that production of the original of a document is a safeguard against fraud. *Id.* § 231. In actions on an instrument such as a promissory note, the production of the original is important for both of these reasons.

**11.** A distinction between the initial admissibility of evidence and its ultimate weight has been drawn by treatises discussing Federal Rule of Evidence 901, which is comparable in its main body to Alaska Rule of Evidence 901:

> In reaching its determination [regarding admissibility], the court must view all the evidence introduced as to authentication or identification, including issues of credibility, most favorably to the proponent. The ultimate decision as to whether a person, document, or item of real or demonstrative evidence is as pur-

proof for the initial determination of admissibility of a copy is reached by combining the basic standard for admissibility of original documents, as expressed in *McQueeney*, with an additional requirement that when either of the two conditions of Evidence Rule 1003 are met, the proponent must also establish one of the four exceptions of Evidence Rule 1004.

### 2. Was Buster's Proof of the Copy's Authenticity Sufficient to Warrant Its Admission into Evidence?

■ This question can be expanded as follows: Did Buster establish a foundation from which the factfinder could legitimately infer that the copy of the note and endorsements was authentic, and if so, given that an Evidence Rule 1003 objection was raised, did Buster establish admissibility under Evidence Rule 1004?

Buster sought to establish that the three-page exhibit, including the endorsements, was identical to the lost original. Thus, in the context of Evidence Rule 1003, "the original" refers not only to the two-page note, but also to the third page of signatures. As a result of the substantive law implicated by the claim, namely former AS 45.03.202(b), and his own testimony, Buster needed to prove that the signature page was in fact a copy of the back of the note.[12]

We conclude that Buster met this burden. Buster's own testimony provided the basis for a legitimate inference that the first two pages of the note (its terms and conditions) were in fact identical to the original note that Gale and the Westerhofs signed. As observed earlier, both Gale and Thomas Westerhof testified that they recognized their signatures, and neither challenged the terms of the note. Particularly compelling is the fact that in their cross-motion for partial summary judgment, Gale and the Westerhofs attached an exhibit which consisted of a copy

of a deed of trust note identical in text to the copy Buster sought to introduce. This same exhibit attached to the cross-motion by Gale and the Westerhofs contained a copy of the endorsement page, which included all of the endorsements at issue except Christine Baines' assignment to Buster.

Thus we hold that the superior court erred in refusing to admit into evidence Buster's Exhibit # 1. The exhibit was admissible to show that Gale and the Westerhofs executed the note and its terms, and that the note was endorsed by the Millirons and by Robert Baines through Buster, his attorney-in-fact.

### B. Did the Superior Court Err in Finding that Robert Baines Was Not "Unavailable" Under Alaska Civil Rule 32(a)(3)(B)?

■ Buster argues that the superior court erred in its ruling that the deposition of Robert Baines could not be used at trial. Alaska Civil Rule 32 governs the use of non-party witnesses' depositions at trial:

(a) At the trial ... any part or all of a deposition ... may be used against any party who was present or represented at the taking of the deposition or had reasonable notice thereof, in accordance with any of the following provisions:

. . . .

(3) The deposition of a witness whether or not a party, may be used by any party for any purpose if the court finds ... (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the state, unless it appears that the absence of the witness was procured by the party offering the deposition....

Gale and the Westerhofs were represented at the deposition by their attorney. During the deposition, Robert Baines had stated that

---

ported is for the trier of fact.... [U]pon consideration of the evidence as a whole, if a sufficient foundation has been laid in support of introduction, contradictory evidence goes to the weight to be assigned by the trier of fact and not to admissibility.

Michael H. Graham, *Federal Practice and Procedure* § 6821, at 850 (interim ed. 1992).

12. Former AS 45.03.202(b) provided that to negotiate an instrument, "[a]n endorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed to the instrument thereto as to become a part of the instrument." Buster testified that the endorsements had been written on the back of the note.

he could come to Alaska for the trial if it were necessary. At trial, Buster stated that for Baines to come to Anchorage would involve a costly flight from London, England. Buster argued that this expense might not be justified based on Buster's belief that there was a good chance that Gale and the Westerhofs would declare bankruptcy if he received an affirmative judgment.

In ruling that use of the deposition would not be allowed, the superior court stated that "the record does not affirmatively reflect by affidavit or sworn testimony [Baines'] unavailability...." At the conclusion of trial, the judge noted:

> Mr. Buster says that it's his belief that about someplace in this time frame Baines may be in North Africa ... Mr. Buster would not even contend that that is the same as saying that he's not available to be here.

Citing to *In re Adoption of IJW*, 565 P.2d 842 (Alaska 1977), Buster argues that the trial court failed to make a factual determination as to whether the conditions of Civil Rule 32 were satisfied and instead "focused on a lack of showing of the unavailability of Baines to testify at trial." Gale and the Westerhofs argue that Baines should not be presumed to be unavailable for three reasons: (1) Baines' initial presence in Anchorage for the deposition mandates a higher requirement of proof of subsequent unavailability; (2) Baines stated at the deposition that he could be available in Anchorage for trial, if necessary; and (3) the evidence of Baines' actual location at the time of trial was inconclusive.

We hold that the superior court erred in its ruling that Buster could not introduce into evidence Robert Baines' deposition. Under the parallel federal rule it has been held that deposition testimony of witnesses living more than 100 miles from the place of trial is freely admissible at trial. *Klepal v. Pennsylvania R.R. Co.*, 229 F.2d 610, 612 (2d Cir. 1956). As to the requisite showing necessary for admission of deposition testimony, Professor Moore states: "Although the proximi-

ty of a witness is to be measured at the time the deposition is offered, a showing that the witness resided beyond the 100–mile distance at some recent earlier time will usually be sufficient to admit the deposition, in the absence of evidence to the contrary." *See* 4A James W. Moore & Jo Desha Lucas, *Moore's Federal Practice* ¶ 32.05, at 32–32 to 32–33 (2d ed. 1993) (footnote omitted); *see also IJW*, 565 P.2d at 846.

The record discloses that Buster established that Baines was not within 100 miles of the place of trial at the time of trial.[13] Thus we conclude that the superior court's ruling was erroneous.

### C. Did The Superior Court Err in Holding that Buster Failed to Present Clear And Convincing Evidence of His Right to Recover on the Note?

Our earlier holdings that the superior court erred in its refusal to admit into evidence Exhibit #1 and Robert Baines' deposition testimony would normally require a remand for·new trial. On the other hand, review of the record persuades us that a new trial is unnecessary, since we conclude that on the basis of the evidence admitted at trial the superior court erred in holding that Buster failed to present clear and convincing evidence of his right to recover on the note. On the contrary, Buster proved all the elements of his right to recover on the note under former AS 45.03.804.

Our starting point is the well established common law doctrine that an unintentional loss of a written evidence of debt does not extinguish the rights and obligations of the parties thereto. *Bottum v. Herr*, 83 S.D. 542, 162 N.W.2d 880, 884 (1968); 52 Am. Jur.2d *Lost and Destroyed Instruments* § 2 (2d ed. 1970). In recognition of this principle, and the historic common law remedies afforded in law and equity to the owner of a lost instrument, the drafters of the Uniform Commercial Code provided:

> The owner of an instrument which is lost, whether by destruction, theft or otherwise,

---

13. Buster testified that three weeks prior to trial he received a call from Robert Baines and that Baines told him that "he was in London and he

and his wife were on their way to North Africa somewhere for two or three weeks, and then they'd be returning to London."

may maintain an action in his own name and recover from any party liable thereon upon due proof of his ownership, the facts which prevent his production of the instrument and its terms. The court may require security indemnifying the defendant against loss by reason of further claims on the instrument. Former U.C.C. § 3–804 (superseded 1990).[14] At the time of the events leading to this litigation, this provision of the U.C.C. was part of Alaska statutory law. See former AS 45.03.804.

In order to determine whether the superior court erred in its ruling that Buster failed to prove his claim under former AS 45.03.-804, we must first determine if the superior court correctly held that "clear and convincing evidence" is the appropriate burden of proof for actions under former AS 45.03.804.

Courts that have addressed this burden of proof issue under similar statutory provisions have required proof by "clear and convincing" evidence. See, e.g., Castellano v. Bitkower, 216 Neb. 806, 346 N.W.2d 249, 252 (1984) (stating that the appropriate standard of evidence regarding lost notes is "clear and convincing" evidence); Lutz v. Gatlin, 22 Wash.App. 424, 590 P.2d 359, 361 (1979) ("To establish a lost instrument, the evidence must be clear, cogent and convincing.").

■ Clear and convincing evidence has been characterized as evidence that is greater than a preponderance, but less than proof beyond a reasonable doubt. Castellano provides a useful statement of the standard, holding that "clear and convincing evidence means and is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved." 216 Neb. 806, 346 N.W.2d at 253; see also Welton v. Gallagher, 2 Haw.App. 242, 630 P.2d 1077, 1081 (1981), aff'd, 65 Haw. 528, 654 P.2d 1349 (1982).

■ We believe that the clear and convincing evidence standard adopted by the superior court is the appropriate standard of proof under former AS 45.03.804, as it provides the heightened scrutiny that is necessary to ensure that a party claiming to have lost physi-

---

14. The official comment to this section read:
**Purposes:**

This section is new. It is intended to provide a method of recovery on instruments which are lost, destroyed or stolen. The plaintiff who claims to be the owner of such an instrument is not a holder as that term is defined in this Act, since he is not in possession of the paper, and he does not have the holder's prima facie right to recover under the section on the burden of establishing signatures. He must prove his case. He must establish the terms of the instrument and his ownership, and must account for its absence.

If the claimant testifies falsely, or if the instrument subsequently turns up in the hands of a holder in due course, the obligor may be subjected to double liability. The court is therefore authorized to require security indemnifying the obligor against loss by reason of such possibilities. There may be cases in which so much time has elapsed, or there is so little possible doubt as to the destruction of the instrument and its ownership that there is no good reason to require the security. The requirement is therefore not an absolute one, and the matter is left to the discretion of the court.

Article 3 of the U.C.C. was substantially revised in 1990. See 2 U.L.A. 5 (1991). As a result, significant changes occurred in the language of § 3–804. This section has been renumbered § 3–309, and it reads as follows:

(a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

(b) A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, Section 3–308 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

The legislature recently amended AS 45.03, adopting language which substantially conforms with the new changes in the U.C.C. See AS 45.03.309.

cal control over an instrument was in fact the rightful owner of the instrument. This heightened standard should reduce the instances where multiple parties come forward to claim ownership of a missing note. While the statute envisions such a problem and accordingly provides that a court may require the posting of security to indemnify the defendant against future claimants, the heightened burden of proof serves as an additional safeguard.

■ We next address whether the superior court erred in its conclusion that Buster failed to present clear and convincing evidence of his right to recover on the note.

Under the provisions of former AS 45.03.-804, Buster must establish (a) the facts which prevent production of the instrument, (b) the terms of the instrument, and (c) "due proof of ownership." We address these issues seriatim.

Upon review of the record we believe that Buster's uncontradicted evidence clearly and convincingly established that the note in question was unintentionally lost.[15] Similarly, study of the evidence persuades us that Buster clearly and convincingly established the terms of the note. We reach this conclusion for essentially the same reasons identified in our earlier discussion of the admissibility of Exhibit # 1.[16]

Proof of Buster's ownership of the note involves the following critical links: (1) the initial promise to pay embodied in the note by Gale and the Westerhofs to the Millirons;

(2) the subsequent assignment of the note by the Millirons to the Baineses; (3) proof that Buster was given general powers of attorney by the Baineses; and (4) the conveyances, through the general powers of attorney, of the Baineses' interest in the note to Buster.

We conclude that Buster clearly and convincingly proved that Gale and the Westerhofs executed a deed of trust note on June 14, 1984, in the principal sum of $44,000 to the Millirons. The unrefuted evidence also shows that the Millirons assigned their interests in the note to the Baineses in May 1985. It is also uncontradicted that the Baineses granted general powers of attorney to Buster in May 1988. Lastly, we are persuaded that the evidence in the record clearly and convincingly establishes that under the unrevoked general powers of attorney given him by the Baineses, Buster conveyed both of their interests in the note to himself. In light of the above, we hold that Buster has clearly and convincingly proved ownership of the note as well as the remaining elements of a claim under former AS 45.03.804.

## V. CONCLUSION

The matter is REVERSED and REMANDED to the superior court with directions to vacate its judgment and award of attorney's fees and costs, and to enter an appropriate judgment for Buster under the deed of trust note. In fashioning its judgment on remand the superior court shall determine whether it will require security to indemnify Gale and the Westerhofs against

---

15. In part, the record reveals the following testimony on Buster's part:

Q What happened to the original of the deed of trust note?
A I discarded the original note by error.
Q How?
A I'd had a previous collection matter with Mr. Westerhof and had maintained that file just for—in case that there was some ancillary information that might be of use to me in there, and I married the two files, that is, the old file and the new file, the new file being the one that contained this particular note. And in a frenzy of housecleaning one day I decided that there was no information in the old file on Mr. Westerhof and I threw it in the garbage along with a number of other files. It wasn't until some time later that I—that I reasoned that I must have included this new file or this partic-

ular—the original to this note in that file and discarded it, because it was nowhere to be found and that's the only explanation that I have.

Buster testified further that during settlement negotiations with Gale and Thomas Westerhof

I went back because these gentlemen were still waiting for me and I told 'em I couldn't find the note and that until I could find the note or determine what happened to it, there wasn't any point in proceeding further. Then they went away, I went back and made a more thorough and careful search of all my files and records and—an exhaustive search, and couldn't find it.

16. In addition to the evidence previously referred to we note that counsel for Gale and the Westerhofs stipulated that they signed the note and that it had a principal amount of $44,000.

loss by reason of further claims on the deed of trust note.[17]

---

17. Our resolution of this appeal makes it unnec-essary to address any other issues raised herein.