IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

IN RE ESTATE OF KNICKMAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE ESTATE OF DENNIS M. KNICKMAN, DECEASED.

KIMBERLY ANN DAWES, PERSONAL REPRESENTATIVE OF THE
ESTATE OF DENNIS M. KNICKMAN, DECEASED, APPELLANT,
V.
GOLDINE KNICKMAN, APPELLEE.

Filed May 6, 2014.    No. A-13-405.

Appeal from the County Court for Otoe County: JEFFREY J. FUNKE, Judge. Affirmed in part, and in part reversed and vacated.

Gerald M. Stilmock, of Brandt, Horan, Hallstrom & Stilmock, for appellant.

Donald R. Witt, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellee.

INBODY, Chief Judge, and MOORE and PIRTLE, Judges.

INBODY, Chief Judge.

## INTRODUCTION

Kimberly Ann Dawes, personal representative of the estate of Dennis M. Knickman (the decedent), appeals the decision of the Otoe County Court approving Goldine Knickman's request to recover amounts due on a 1996 promissory note and also approving additional expenses, i.e., real estate taxes and insurance premiums, paid by her relating to real property secured by the note.

## STATEMENT OF FACTS

In 1996, the decedent requested that his mother, Knickman, loan him money to purchase a bar in Blue Hill, Webster County, Nebraska. Knickman agreed to do so and on April 23, 1996, the decedent signed a promissory note to Knickman for $55,000 at 9 percent interest with

monthly payments. In order to make the loan to the decedent, on that same date, Knickman borrowed $55,000 from a bank in Unadilla, Nebraska, at 9 percent interest with annual payments.

The April 1996 promissory note was signed by the decedent individually and as president of K-D's Place, Inc., a Nebraska corporation. The promissory note was also secured by a deed of trust on the Blue Hill property and was executed by the decedent as president of K-D's Place. Pursuant to paragraph 4 of the deed of trust, if K-D's Place, as the trustor, failed to maintain insurance on the Blue Hill property, Knickman, as the beneficiary, could "procure such insurance, pay the premiums thereof, and such sums shall immediately become due and payable with interest at the rate of 9% per annum until paid and shall be secured by this Deed of Trust." Additionally, pursuant to paragraph 14 of the deed of trust:

> Trustor will pay to Trustee and to the Beneficiary respectively, upon demand, the amounts of all sums of money which either shall have paid or expended in curing any default of Trustor under this Deed of Trust, together with interest upon each of said amounts, until paid, from the time of expenditure thereof, at a rate of 9% per annum.

Paragraph 9 of the deed of trust provided that the "Trustor will pay all taxes, assessments and other public charges upon the Trust Property before the same by law become delinquent."

In October 2000, the decedent attempted suicide. After the decedent's suicide attempt, Knickman paid certain expenses relating to the bar and Blue Hill property, including real estate taxes and insurance until the sale of the property on October 8, 2009. Just prior to the sale of the property, the decedent executed an "ASSIGNMENT AND RELEASE" which authorized the payment of the sale proceeds from the Blue Hill property to Knickman. This "ASSIGNMENT AND RELEASE" was executed by the decedent on September 23 in both his individual capacity and as the president of K-D's Place. The "ASSIGNMENT AND RELEASE" provided in part, with the decedent identified as the releasor and Knickman identified as the releasee:

> Releasor acknowledges that Releasee has paid the real estate property taxes for the above-captioned property, together with expenses relating to the upkeep of the property, and hereby releases any and all claim he has to monies from the sale of the above-captioned property to Releasee, and Releasor acknowledges that Releasor's indebtedness to Releasee exceeds the amount held in escrow from the sale of the above-captioned property, and that this Assignment and Release does not release Releasor from other indebtedness to Releasee.

Pursuant to the provisions of the "ASSIGNMENT AND RELEASE," the net proceeds from the sale of the Blue Hill property consisting of $9,282.53 were paid to Knickman in November 2009.

The decedent passed away on July 16, 2011. Dawes, as decedent's daughter, filed an application for informal probate and informal appointment of personal representative. Dawes was appointed as personal representative, and a notice of informal probate and notice to creditors was published on November 14.

In a statement of claims filed on January 6, 2012, Knickman sought payment on the $55,000 promissory note plus interest executed by the decedent on April 23, 1996, for a total claim of $123,679.97. Knickman alleged that the payment from the sale of the Blue Hill property in 2009 tolled the statute of limitations. This claim was disallowed by Dawes. Knickman then

filed a petition for allowance in which she sought payment on the 1996 promissory note plus interest for a total claim of $123,679.97 and alleged that the 2009 payment tolled the statute of limitations. Dawes resisted the petition for allowance on claims, affirmatively alleging that the 1996 promissory note was barred by the statute of limitations and that the decedent had not made any payments in his individual capacity which would have tolled the statute of limitations.

On December 3, 2012, Knickman was granted leave to amend her claim, and on December 5, she filed an amended petition for allowance which decreased the amount Knickman was requesting on the 1996 promissory note from $123,679.97 to $44,642.80 plus interest. This modification was made because, during discovery, Knickman determined that additional payments had been made to her bank on the loan and Knickman was assuming that those payments had been made by the decedent.

On February 13, 2013, Knickman filed a motion seeking leave to file a second amended petition for allowance in which she expanded her claim to request payment of, inter alia, real estate taxes and insurance relating to the property. The county court granted Knickman's request, and her second amended petition for allowance was filed on February 19. In the second amended petition for allowance, in addition to the claimed amount sought on the 1996 promissory note, Knickman also sought payments she made between the years 2003 and 2009 for, inter alia, real estate taxes and insurance on the Blue Hill property. A hearing was held on Knickman's second petition for allowance of claim on March 22. At the hearing, in addition to evidence establishing the previously mentioned facts, evidence was adduced which established that in addition to the April 1996 loan, the decedent executed four other promissory notes to Knickman, reflecting loans made by Knickman to decedent: $5,000 in February 1996; $2,000 in October 1999; $3,500 in December 1999; and $5,500 in February, year unknown. Although these loans were briefly addressed during the hearing, Knickman did not seek recovery on any of those four loans.

In an order filed on April 8, 2013, the county court rejected Dawes' argument that Knickman's claim regarding the 1996 promissory note was time barred by the statute of limitations. The court found that the 2009 "ASSIGNMENT AND RELEASE," which was signed by the decedent in both his individual capacity and as president of K-D's Place, acknowledged the indebtedness owed to Knickman and his continuing obligation to pay such indebtedness and that pursuant to the "ASSIGNMENT AND RELEASE," a payment of $9,282.53 was paid to Knickman in November 2009. The county court found that the assignment of funds on September 23, 2009, revived the 1996 debt and extended the statute of limitations an additional 6 years from the September 23, 2009, date. Consequently, the court found that all unpaid principal and accrued interest owed by the decedent remained a valid claim and approved Knickman's claim for unpaid principal and accrued interest in the amount of $51,182.82.

The county court also found that pursuant to the 1996 deed of trust executed on the Blue Hill property, Knickman was permitted to make insurance payments on the property if the decedent failed to do so, and that unless the 5-year statute of limitations had expired, the decedent was responsible for the insurance premiums paid by Knickman. See Neb. Rev. Stat. § 25-205 (Reissue 2008) (actions on written contracts, on foreign judgments, or to recover collateral). However, since the only request for insurance premiums made by Knickman had been included in the second amended petition for allowance filed on February 19, 2013, the court found any insurance premiums paid by Knickman prior to February 19, 2008, were time barred

by the 5-year statute of limitations. Consequently, the court approved Knickman's request for insurance premiums paid by her after February 19, 2008, which premiums amounted to $786.60.

Also relying upon language contained in the deed of trust, specifically paragraphs 9 and 14, the court further found that Knickman had the right to pay the real estate taxes for the Blue Hill property before they became delinquent and that the decedent was then obligated to repay her for any taxes paid. The court noted that although the 5-year statute of limitations set forth in § 25-205 limited the period Knickman had to bring an action to recover the real estate taxes paid by her, pursuant to Neb. Rev. Stat. § 25-216 (Reissue 2008):

> "[I]n any cause founded on contract, when any part of the principal or interest shall have been voluntarily paid, or an acknowledgment of an existing liability, debt or claim, or any promise to pay the same shall have been made in writing, an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment or promise."

Since the decedent acknowledged Knickman's payment of real estate taxes in the September 2009 "ASSIGNMENT AND RELEASE," as well as acknowledging that the payment made would not satisfy decedent's debt to Knickman, the county court found that the "ASSIGNMENT AND RELEASE" tolled the statute of limitations and that Knickman's claim was timely filed within 5 years of September 2009. Consequently, the county court approved Knickman's claim for real estate taxes paid in the amount of $10,552.56.

## ASSIGNMENTS OF ERROR

On appeal, Dawes contends that the evidence was insufficient to show, by clear and convincing evidence, that the 1996 promissory note had been revived so as to remove the bar of the statute of limitations. Dawes further contends that the county court did not have jurisdiction to award Knickman allowance on her claims for insurance premiums and real estate taxes, which claims arose prior to the decedent's death, had not been included in her original statement of claim, were alleged for the first time on February 19, 2013, and therefore were time barred as not having been submitted within 2 months after proper publication of notice to creditors of the estate as required by Neb. Rev. Stat. § 30-2485 (Cum. Supp. 2012).

## STANDARD OF REVIEW

Absent an equity question, appeals of matters arising under the Nebraska Probate Code are reviewed for error on the record. See *In re Estate of Hedke*, 278 Neb. 727, 775 N.W.2d 13 (2009). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *In re Estate of Dueck*, 274 Neb. 89, 736 N.W.2d 720 (2007).

In reviewing a judgment of the probate court in a law action, we do not reweigh evidence, but consider the evidence in the light most favorable to the successful party, and we resolve evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *In re Estate of Hedke, supra*. The probate court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous. *Id.* An appellate court, in reviewing a judgment for errors appearing on the record, will not substitute its factual findings for those of the trial court when competent evidence supports those findings. *Id.*

A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision. *In re Estate of Hockemeier*, 280 Neb. 420, 786 N.W.2d 680 (2010).

ANALYSIS

*Revival of 1996 Promissory Note.*

On appeal, Dawes contends that the evidence was insufficient to establish, by clear and convincing evidence, that the 1996 promissory note had been revived so as to remove the bar of the statute of limitations.

Pursuant to Neb. U.C.C. § 3-118(a) (Cum. Supp. 2012), "[e]xcept as provided in subsection (e)," which is not applicable to the instant case,

> an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date.

In this case, Knickman was seeking payment on a $55,000 promissory note which had been executed by the decedent on April 23, 1996. Since Knickman's petition for allowance was not filed until January 6, 2012, the 6-year statute of limitations barred her claim on the 1996 promissory note unless the debt was revived.

After a debt has been barred by the statute of limitations, a voluntary payment of principal revives the debt. *Castellano v. Bitkower*, 216 Neb. 806, 346 N.W.2d 249 (1984). "The theory underlying the effect of part payment on a debt is a voluntary acknowledgment of the debt which starts the statute of limitations running anew from the date of the payment." *Id*. at 810, 346 N.W.2d at 253.

In order to remove the statute of limitations' bar to recovery, these conditions must occur: (1) a partial payment must be made and accepted as a payment on the particular debt in question; (2) the partial payment must be made under circumstances which warrant a clear inference that the debtor recognizes and acknowledges the entire debt as the debtor's existing liability; and (3) the partial payment must demonstrate the debtor's willingness, or at least his obligation, to pay the balance of the debt. *Id*. Additionally, the payment must be distinct, unequivocal, and without any condition or qualification. *Id*. "The debtor must definitely point out the debt or obligation on which the payment is made and clearly evidence an intention to discharge the debt in part as a result of the part payment." *Id*. at 811, 346 N.W.2d at 253. See *In re Estate of Anderson*, 148 Neb. 436, 27 N.W.2d 632 (1947).

Because a partial payment can result in a debtor's waiver or relinquishment of the defense afforded by the statute of limitations, the creditor must prove by clear and convincing evidence that there has been a partial payment of the debt in order to enforce a claim barred by the statute of limitations. *Castellano v. Bitkower, supra*. Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. *Id*.

The county court found that exhibit 12, the 2009 "ASSIGNMENT AND RELEASE," which was signed by the decedent in both his individual capacity and as president of K-D's Place, acknowledged the indebtedness owed to Knickman and his continuing obligation to pay

- 5 -

such indebtedness and that pursuant to the "ASSIGNMENT AND RELEASE," a payment of $9,282.53 was paid to Knickman in November 2009. The county court found that the assignment of funds on September 23, 2009, revived the 1996 debt and extended the statute of limitations an additional 6 years from the September 23, 2009, date. Consequently, the court found that all unpaid principal and accrued interest owed by the decedent on the April 1996 note remained a valid claim and approved Knickman's claim for unpaid principal and accrued interest in the amount of $51,182.82.

Dawes argues exhibit 12 was insufficient because the "ASSIGNMENT AND RELEASE" failed to clearly, distinctly, and unequivocally make any reference to the April 1996 promissory note. She contends that the 1996 promissory note was just one of five promissory notes that the decedent executed in favor of Knickman and that the "ASSIGNMENT AND RELEASE" also included references to other indebtedness owed to Knickman by the decedent, i.e., real property taxes and expenses related to the upkeep of the Blue Hill property. Thus, Dawes contends that Knickman could not clearly and convincingly establish that the language contained in the "ASSIGNMENT AND RELEASE" relating to "indebtedness" and "other indebtedness" specifically referenced the 1996 promissory note.

Although we agree with Dawes that the 2009 "ASSIGNMENT AND RELEASE" did not specifically identify the 1996 promissory note, the language contained in the document did acknowledge that the decedent's debts exceeded the amount which was held in escrow from the sale of the property and that the decedent recognized his debts to Knickman and his obligation to pay them. It is clear that the 1996 promissory note which enabled the decedent to purchase the property which was being sold was being referenced by the decedent in the "ASSIGNMENT AND RELEASE." Thus, this document was sufficient to clearly and convincingly establish that in 2009, there was a partial payment of the 1996 debt which removed the statute of limitations bar to recovery. Thus, we find that this assignment of error is without merit.

*Allowance of Other Claims.*

Dawes further contends that the county court did not have jurisdiction to award Knickman allowance on claims which had not been included in her original statement of claim and which were alleged for the first time on February 19, 2013. Dawes argues that Knickman's new claims for real estate taxes and insurance premiums paid, which claims arose prior to the decedent's death and were alleged for the first time in February 2013, were time barred as not having been submitted within 2 months after proper publication of notice to creditors of the estate as required by § 30-2485.

The question of whether the county court had jurisdiction to award Knickman real estate taxes and insurance is an issue of subject matter jurisdiction. Subject matter jurisdiction is a court's power to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general subject involved in the action before the court and the particular question which it assumes to determine. *In re Estate of Hockemeier*, 280 Neb. 420, 786 N.W.2d 680 (2010). Lack of subject matter jurisdiction may be raised at any time by any party or by the court sua sponte. *Id*. A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision. *Id*.

We note that Knickman contends that her claims for real estate taxes and insurance which were raised in her second amended petition for allowance "relate back" to the original petition for allowance, which was timely filed. She cites to *Abbott v. Abbott*, 185 Neb. 177, 174 N.W.2d 335 (1970), for the general rule that "'[a] cause of action pleaded by amendment ordinarily relates back to the original pleading for limitation purposes, provided that claimant seeks recovery on the same general set of facts.'" Brief for appellee at 13. However, a specific statute controls over a general rule, and in this case, the controlling statute is § 30-2485. Cf. *State v. Hernandez*, 283 Neb. 423, 809 N.W.2d 279 (2012) (when there is conflict between statutes, we are guided by principle that to extent there is conflict between two statutes, specific statute controls over general statute); *Robbins v. Neth*, 273 Neb. 115, 728 N.W.2d 109 (2007) (legislative intent manifested by statute controls over agency rule to contrary).

Section 30-2485(a)(1) provides that when a creditor has a claim against a decedent's estate which arose prior to the decedent's death, the claim is barred if not presented within 2 months after proper publication of notice to creditors of the estate. Pursuant to the statute, a creditor may apply to the court within 60 days after the expiration date provided in this subdivision for additional time and the court, upon good cause shown, may allow further time not to exceed 30 days. *Id.* The time periods established by § 30-2485 for the initial presentation of probate claims are mandatory and cannot be waived. *In re Estate of Hockemeier, supra*; *In re Estate of Masopust*, 232 Neb. 936, 443 N.W.2d 274 (1989).

The evidence in the instant case established that notice to creditors was published on November 14, 2011. Knickman's statement of claims filed on January 6, 2012, sought payment on the $55,000 promissory note plus interest executed by the decedent in April 1996. Knickman did not apply to the court for additional time to submit her claim for real estate taxes or insurance, and in fact, Knickman did not make a claim for the payment of real estate taxes or insurance until she filed her second amended petition on February 19, 2013. Since these claims were not raised within 2 months after notice was provided to creditors, nor was a request for additional time applied for and granted, these claims were barred by operation of § 30-2485(a)(1).

## CONCLUSION

In sum, we affirm the county court's order finding that the decedent's debt to Knickman on the April 1996 note remained a valid claim and approving Knickman's claim for unpaid principal and accrued interest in the amount of $51,182.82. However, because we find that Knickman's claims for real estate taxes and insurance were barred by operation of § 30-2485(a)(1), we reverse that portion of the court's order allowing Knickman's claims for real estate taxes and insurance and vacate the court's award to Knickman of $10,552.56 in real estate taxes and $786.60 in insurance.

AFFIRMED IN PART, AND IN PART
REVERSED AND VACATED.