ROYCE LEE GOOD, EXECUTOR OF THE ESTATE OF ALBERT LEE GOOD v. ROY LEE GOOD, MILTON GOOD, AND LAR-MILL KNITTING MILLS, INC.

No. 8425SC107

(Filed 15 January 1985)

1. **Uniform Commercial Code § 31— note not in plaintiff's possession—plaintiff entitled to bring action**

    While plaintiff did not qualify as holder of a promissory note because he did not have possession, he could nevertheless maintain an action if the note's ownership and terms could be proven and its absence could be accounted for. Plaintiff in this case met those requirements where the ownership and terms

of the $30,000 note were largely undisputed, the note itself being before the court, and where plaintiff's evidence accounting for the absence of the note tended to show that the note was executed by the corporate defendant and endorsed by the individual defendants who alleged that they paid the note in full with cash whereupon the original holder then cancelled the note and delivered it and a security agreement to one defendant; the alleged signature on the note was a forgery; on the day of his death, the holder's house was ransacked and certain items were taken; defendant had possession of and presented the note; defendant failed to produce any record of payment other than the note with the holder's alleged signature; plaintiffs testified that the holder's bank records did not show a deposit of $30,000; and there was testimony that previous payments on the note had been by check. G.S. 25-3-804.

2. **Evidence § 28— existence of federal tax lien—evidence admissible to show motive for theft of documents and forgery**

　　In an action to collect on a promissory note where there were allegations of theft of documents, forgery and prior payment of the note, the trial court did not err in permitting rebuttal testimony that there existed an uncancelled and unsatisfied federal tax lien against the corporate defendant, though defendants asserted that admission of the rebuttal testimony was error because it constituted impermissible impeachment through use of a collateral matter, since the evidence that defendants' company was heavily in debt and failing financially tended to show a motive for theft and forgery of the corporation's note.

APPEAL by defendants from *Ferrell, Judge.* Judgment entered 2 September 1983 in Superior Court, CATAWBA County. Heard in the Court of Appeals 25 October 1984.

On 25 May 1982 plaintiff Royce Lee Good instituted this action in his representative capacity as executor of the estate of his father, A. L. Good, to collect principal and accumulated interest due on a promissory note to A. L. Good from Lar-Mill Knitting Mills, Inc. (referred to as Lar-Mill hereafter) endorsed by Milton Good and Roy Good. Roy Good was A. L. Good's brother and Milton Good's father. The promissory note executed on 20 May 1980 had been given in renewal of an earlier May 1979 note, secured by a security agreement upon collateral pledged by Lar-Mill. Interest payments by check were made for June through September 1980 in two payments, 25 June 1980 and 15 September 1980.

On 17 November 1980 A. L. Good died. Shortly thereafter plaintiff qualified as his executor and brought this action.

In his amended complaint, plaintiff alleged that in May 1980 defendant Lar-Mill executed a note to A. L. Good for $30,000 plus

interest at twelve (12) percent, that defendants Milton Good and Roy Good endorsed the note and are "jointly and individually liable" on the note.

In their joint answer defendants admitted execution of a promissory note to A. L. Good in the principal amount of $30,000, that the note was to draw interest at 12 percent per annum payable in 12 monthly installments of $360 each beginning 15 June 1980 and that the principal was to be payable or renegotiated at the end of the 12 month period. The note was executed by Lar-Mill, by and through its president, Milton Good. Defendants further admitted that Milton and Roy Good endorsed the note but denied their liability on the note. The answer alleged that on 1 October 1980 Roy Good as endorser and in response to A. L. Good's demand for immediate payment paid in full the sums due under the note and that A. L. Good cancelled the note and delivered the note and security agreement to Roy Good.

At trial evidence was offered tending to show that the note was executed and endorsed substantially as alleged in the amended pleadings. Plaintiff offered opinion evidence of an expert handwriting examiner, James Durham, that the handwriting on the note, "Paid in full October 1, 1980. A. L. Good" alleged by defendants to be the handwriting and signature of A. L. Good, was not his signature but was a forgery. Plaintiff testified that Roy Good, when questioned by plaintiff's attorney about payment of the note, stated that he paid the note in full in cash. Defendants' evidence was that the only people present when payment was made were Roy Good and the decedent A. L. Good, that the note had been surrendered to Roy Good upon payment after being marked paid in full by A. L. Good and that the note had been in Roy Good's possession or his attorney's possession since that time. Defendants' witnesses, family members, testified that the handwriting on the note was that of A. L. Good.

At the close of plaintiff's evidence and again at the close of all the evidence, defendants moved for directed verdict which was denied.

The jury returned a verdict in favor of plaintiff in the amount of $30,720.00. Defendants' motion for judgment notwithstanding the verdict was denied.

Good v. Good

From judgment entered in favor of plaintiff, defendants appeal.

*Rudisill & Brackett by Keith Bridges for the plaintiff-appellee.*

*Corne, Pitts, Corne & Grant by Robert M. Grant, Jr., for the defendant-appellants.*

EAGLES, Judge.

I

Defendants contend that plaintiff, A. L. Good's executor, cannot maintain the action on the note because he is not a holder and further contend that there is not sufficient evidence of nonpayment to withstand defendants' motions for directed verdict and judgment notwithstanding the verdict. We disagree.

[1] Defendants contend that plaintiff executor did not qualify as a "holder" as contemplated by G.S. 25-3-301. As defendants contend, the holder, i.e. one "who is in possession of . . . an instrument . . . issued or endorsed to him or to his order or to bearer or in blank," has authority to enforce the note. G.S. 25-1-201(20). Contrary to defendants' contentions the mere absence of the note from the owner's possession does not defeat his right to bring the action to enforce the terms of the note. G.S. 25-1-201(20).

The Uniform Commercial Code on which defendants rely, also deals with the missing document situation by providing as follows:

The owner of an instrument which is lost, whether by destruction, theft, or otherwise, may maintain an action in his own name and recover from any party liable thereon upon due proof of his ownership, the facts which prevent his production of the instrument and its terms. The court may require security indemnifying the defendant against loss by reason of further claims on the instrument.

G.S. 25-3-804.

While plaintiff does not qualify as holder because he did not have possession, the official commentary to G.S. 25-3-804 makes it clear that he may maintain the action if the note's ownership and terms can be proven and its absence can be accounted for.

The plaintiff who claims to be the owner of such an instrument is not a holder as that term is defined in this act since he is not in possession of the paper, and he does not have the holder's prima facie right to recover under the section on the burden of establishing signatures. He must establish the terms of the instrument and his ownership and must account for its absence.

Official Comment, G.S. 25-3-804.

We hold that plaintiff has met the requirements of G.S. 25-3-804.

The ownership and terms of the note are largely undisputed; the note itself was before the court.

By way of accounting for the note not being in plaintiff's possession, there was evidence in the form of

(1) expert testimony that the alleged signature on the promissory note was a forgery;

(2) testimony that on 17 November 1980 (the day A. L. Good died), plaintiff discovered that his father's house had been ransacked and certain items were missing;

(3) defendant's possession of and presentation of the promissory note;

(4) defendant Roy Good's testimony that he used his personal savings of $25,000 plus $5,000 in borrowed funds to pay A. L. Good $30,000.00 in cash on October 1, 1980;

(5) defendant Roy Good's failure to produce any record of payment other than the note with A. L. Good's alleged signature;

(6) defendant Roy Good's testimony that his bank records for the end of September 1980 showed his balance was not over $5,000;

(7) defendant Roy Good's testimony that he kept $25,000 in savings in his house;

(8) plaintiff's testimony that A. L. Good's bank records did not show a deposit of $30,000.00; and

(9) testimony that previous payments on the note had been by check.

For the reasons stated we hold that the trial court was correct in denying defendants' motions for directed verdict and judgment notwithstanding the verdict.

## II

[2] Defendants next assign as error admission of rebuttal testimony from Grace Killian that in the Catawba County Clerk of Superior Court's office an uncancelled and unsatisfied federal tax lien against Lar-Mill existed on the clerk's Book of Judgments. This testimony contradicted the prior testimony of defendants Roy Good and Milton Good that in the past there had been a federal tax lien but that it was now paid in full.

Defendants assert that admission of the rebuttal testimony was error because it constituted impermissible impeachment through use of the collateral matter of nonpayment of the federal tax lien. "The proper test for determining what is material and what is collateral is whether the evidence offered in contradiction would be admissible if tendered for some purpose other than mere contradiction." *State v. Long*, 280 N.C. 633, 639, 187 S.E. 2d 47, 51 (1972).

It is clear that this evidence was admissible for a purpose other than mere contradiction, to show the motive of the individual defendants. Evidence of financial status such as unpaid liens and similar obligations is recognized as a proper technique for showing motive. *State v. Pate*, 40 N.C. App. 580, 253 S.E. 2d 266, *cert. denied*, 297 N.C. 616, 257 S.E. 2d 222 (1979); *McCorkle v. Beatty*, 226 N.C. 338, 38 S.E. 2d 102 (1946).

Further it is clear that evidence of motive is admissible where allegations of theft of documents, forgery and prior payment of a note are involved. Dean Brandis notes: "The existence of a motive is . . . a circumstance tending to make it more probable that the person in question did the act, hence evidence of a motive is always admissible where the doing of the act is in dispute." 1 Brandis, *North Carolina Evidence*, Section 83 (2d ed. 1982).

The disputed evidence was material, relevant and admissible. That defendants' company was heavily in debt and failing financially tended to show a motive for theft and forgery of the corporation's note.

Defendants argue as an additional basis for reversal that Ms. Killian's testimony about the federal tax lien records was impermissible as incompetent and irrelevant character evidence about specific acts. We disagree, noting that if the specific acts are "relevant and competent as evidence of something other than character, they are not inadmissible because they incidentally reflect upon character." 1 Brandis, *North Carolina Evidence*, Section 111 (2d ed. 1982).

Having carefully reviewed all defendants' assignments of error, we find in the trial

No error.

Chief Judge VAUGHN and Judge BRASWELL concur.

Former Chief Judge VAUGHN concurred in the result reached in this case prior to 31 December 1984.

Judge BRASWELL concurred in the result reached in this case prior to 31 December 1984.