PAULA GAGNE, APPELLEE AND CROSS-APPELLANT, V.
JAMES D. SEVERA, M.D., DOING BUSINESS AS OMAHA
PSYCHIATRIC ASSOCIATES, APPELLANT AND CROSS-APPELLEE.
612 N.W. 2d 500

Filed June 30, 2000.    No. S-99-522.

Benjamin M. Belmont, of Lustgarten & Roberts, P.C., for appellant.

Angela L. Burmeister and Richard N. Berkshire, of Andersen, Berkshire, Lauritsen & Brower, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, and McCORMACK, JJ.

GERRARD, J.

## INTRODUCTION

James D. Severa, a physician, doing business as Omaha Psychiatric Associates (OPA), appeals from a judgment, entered pursuant to a jury verdict, awarding Paula Gagne $15,184.42 in damages for breach of contract, and attorney fees in the amount of $12,500. Gagne has filed a cross-appeal. Severa claims that the district court should have granted his motion for a directed verdict. Because we conclude that Gagne failed to adduce sufficient proof of damages to allow the issue to go to the jury, we reverse the judgment of the district court and remand the cause with directions to dismiss Gagne's petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Severa owns and is the sole proprietor of OPA, a firm that provides therapy, psychiatric care, counseling, psychology, and social work services. OPA contracts with psychiatrists, psychologists, and other mental health professionals to supply them with common office facilities, support staff, and billing services in connection with their practices. In return, the mental health professionals associate their practice with OPA and allow OPA to withhold a portion of their fees collected each month.

On February 23, 1989, Severa entered into an "Independent Contractor Agreement" with Gagne, a licensed psychologist, which provided that OPA would bill Gagne's clients; contact

insurance companies; collect the fees Gagne had earned; provide Gagne with office space, stationery, basic telephone service, "necessary clerical staff," an advertisement in the Omaha telephone directory yellow pages, and monthly statements of accounts; and after withholding OPA's share, remit the balance to Gagne on a monthly basis. The agreement also provided, in pertinent part:

> All billings for [Gagne] shall be prepared on [OPA] letterhead, with the designation in said billing as to the name of [Gagne] providing those services. All monies received, pursuant to such billings, shall be held by [OPA]. From the first $5,000 in gross fees collected for [Gagne], [OPA] shall be entitled to 30 percent thereof. Any fees collected above $5,000 during the month [OPA] shall be entitled to 25 percent thereof (with the exception of fees received through Nebraska welfare, which shall always be subject to a 35 percent payment), for the services [OPA] performs on behalf of [Gagne] as set forth in this agreement. Accordingly [OPA] shall deduct from the gross monthly fees received on behalf of [Gagne], the sum of 30 percent (or 35 percent as relevant) of said fees, and shall remit a check monthly for the gross proceeds less [Gagne's] fee to [OPA]. In addition, if [OPA] advance[s] any funds at any time during the month for special materials or items as requested by [Gagne], [OPA] shall be entitled to a further deduction from the gross proceeds in an amount sufficient to fully reimburse [OPA] for its advance made by reason of such special materials or items for [Gagne].

The term of the contract was for 6 months, after which either party could terminate the contract upon 30 days' written notice.

On April 1, 1993, Gagne gave Severa written notice of her intent to terminate her association with OPA as of May 1. Approximately 3 weeks before the end of her association with OPA, on April 8, Gagne requested and received from the business manager at OPA a summary of the outstanding balances on all of her patients' accounts, which revealed an outstanding balance of $16,154.56. At this time, Gagne decided to independently calculate the amounts due her from OPA.

After concluding that OPA owed her $15,354.42, Gagne filed the instant lawsuit in which she sought recovery for breach of contract, for lost profits, and for wages she claimed entitlement to under the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. §§ 48-1228 through 48-1232 (Reissue 1988), in addition to costs and attorney fees pursuant to the act. Severa denied the allegations in the petition and asserted that if the act was applicable, he was entitled to costs and reasonable attorney fees thereunder. The case proceeded to trial.

At trial, Gagne testified that the total of the charges she had submitted to OPA for billing was $227,060. Gagne reached this conclusion by reviewing her appointment book and then multiplying the number of sessions therein by the applicable rate at the time of those sessions. Gagne testified that she calculated these figures by referring to her appointment book because she considered the book to be the most accurate listing of which patients were seen at which rates. Gagne then explained that she submitted the entire amount of $227,060 to OPA for collection and that after all proper deductions were made, OPA still owed her $15,354.42.

At the conclusion of Gagne's case in chief, and again at the close of all of the evidence, Severa made a motion for a directed verdict based upon his assertion that Gagne had not provided sufficient evidence to prove her damages, but that she was merely asking the jury to speculate regarding the amount of damages. Severa also argued that Gagne was not an employee, as that term is defined in the Nebraska Wage Payment and Collection Act, and that he was therefore entitled to a directed verdict on the third cause of action. After Gagne's concession that she was no longer pursuing the lost profits issue raised in her second cause of action, the district court sustained Severa's motion for a directed verdict on Gagne's second cause of action at the close of her case in chief, while denying the motion as to the first and third causes of action. At the close of all the evidence, the district court again denied Severa's motion for a directed verdict and submitted the first cause of action to the jury, reserving the Nebraska Wage Payment and Collection Act claim for its own determination.

The jury returned a verdict in favor of Gagne in the amount of $15,184.42. The trial court then determined that Gagne was

an employee of OPA and Severa, as that term is defined by the Nebraska Wage Payment and Collection Act. Then, "[u]pon consideration of the evidence and the law, and upon consideration of the verdict of the jury on [Gagne]'s first cause of action," the trial court entered a judgment in which it determined that Gagne should recover $15,184.42, "plus [Gagne]'s taxable costs, including an attorney fee to be deemed at a subsequent hearing." Severa filed motions for a new trial and for judgment notwithstanding the verdict, which were overruled by the trial court on December 31, 1996, the same date upon which the trial court overruled a motion for prejudgment interest previously filed by Gagne. Severa then appealed to the Nebraska Court of Appeals, which appeal was docketed in that court as case No. A-97-048.

After Severa filed his notice of appeal in case No. A-97-048, the trial court held a hearing on Gagne's motion for costs and attorney fees. The court determined that because of the appeal pending before the Court of Appeals, it did not have jurisdiction to consider her motion. Gagne appealed, which appeal was docketed as case No. A-97-726; that case was subsequently consolidated with case No. A-97-048 by the Court of Appeals.

In an unpublished memorandum opinion, the Court of Appeals analyzed the case as an action for a legal accounting rather than for a breach of contract and concluded that the evidence was insufficient to support the jury verdict in Gagne's favor. See *Gagne v. Severa*, 7 Neb. App. xii (cases Nos. A-97-048 and A-97-726, May 6, 1998). The judgment entered in Gagne's favor was reversed, and the cause was remanded with directions to dismiss Gagne's petition. The Court of Appeals further concluded that their resolution of that issue rendered Gagne's appeal in case No. A-97-726 moot, and Gagne's appeal therein was dismissed.

Gagne petitioned this court for further review, which petition was granted on September 1, 1998. In that same order, the parties were ordered to provide supplemental briefs on the issue whether the appeals should be dismissed for want of jurisdiction pursuant to *State ex rel. Fick v. Miller*, 252 Neb. 164, 560 N.W.2d 793 (1997) (holding that order awarding attorney fees in amount to be determined at later date was not final, appealable

order). Prior to oral arguments and after those briefs were submitted, this court determined that it was without jurisdiction to hear either appeal because of Gagne's unresolved motion for attorney fees in the trial court. On November 18, the judgment of the Court of Appeals was vacated and Gagne's appeal was dismissed.

On remand, the district court conducted a hearing on Gagne's request for attorney fees, after which an order was entered awarding Gagne attorney fees in the amount of $12,500. Severa timely appealed from the order awarding Gagne attorney fees, and Gagne cross-appealed. We moved the case to our docket pursuant to our authority to regulate the dockets of the appellate courts of this state.

## ASSIGNMENTS OF ERROR

Severa asserts that the district court erred in (1) failing to sustain his motion for a directed verdict made at the close of all the evidence, (2) failing to sustain his motion for judgment notwithstanding the verdict, (3) submitting the issue of damages to the jury without sufficient evidence to support a verdict, (4) receiving exhibit 17 into evidence, (5) failing to sustain Severa's motion for a new trial, (6) finding that Gagne was an employee under the Nebraska Wage Payment and Collection Act and entering judgment thereunder against Severa, and (7) awarding Gagne $12,500 in attorney fees.

In her cross-appeal, Gagne asserts that the district court erred in failing to sustain her motion for prejudgment interest.

## STANDARD OF REVIEW

A civil verdict will not be set aside where evidence is in conflict or where reasonable minds may reach different conclusions or inferences, as it is within the jury's province to decide issues of fact. *Ratigan v. K.D.L., Inc., ante* p. 283, 609 N.W.2d 376 (2000). A jury verdict will not be set aside unless clearly wrong, and it is sufficient if any competent evidence is presented to the jury upon which it could find for the successful party. *Id.*

With regard to the overruling of a motion for a directed verdict made at the close of all the evidence, appellate review is

controlled by the rule that a directed verdict is proper only where reasonable minds can draw but one conclusion from the evidence, where an issue should be decided as a matter of law. *Id.*

## ANALYSIS

Severa first contends that the district court erred in not sustaining his motion for a directed verdict at the close of all of the evidence. Severa's assertion is equivalent to an assertion that he was entitled to a judgment as a matter of law. See *id.* Implicit in the district court's overruling of Severa's motion is the determination that sufficient evidence had been adduced to establish that Gagne had incurred damages attributable to Severa's alleged breach of contract and that Severa's assertions to the contrary were without merit.

It has long been the law in Nebraska that one injured by a breach of contract is entitled to recover all its damages, including the gains prevented as well as losses sustained, provided the damages are reasonably certain and such as might be expected to follow the breach. *Katskee v. Nevada Bob's Golf of Neb.*, 238 Neb. 654, 472 N.W.2d 372 (1991). Damages, like any other element of a plaintiff's cause of action, must be pled and proved, and the burden is on the plaintiff to offer evidence sufficient to prove the plaintiff's alleged damages. *World Radio Labs. v. Coopers & Lybrand*, 251 Neb. 261, 557 N.W.2d 1 (1996). Thus, in order for Gagne to recover, she must prove that Severa breached the independent contractor agreement, as well as damages attributable to Severa's alleged breach.

The contract between Gagne and Severa provided that Gagne was entitled to a certain percentage of the "gross fees collected" by Severa on Gagne's behalf. In order to prove that Severa breached his duty under the contract and that she was entitled to damages, Gagne was obligated to adduce evidence of the amount that Severa failed to properly bill, of the amount Severa failed to properly collect, or of the amount of "gross fees collected" by Severa, but not paid to Gagne. In other words, the total amount billed by OPA on behalf of Gagne is of no consequence in the instant case; the significant figures are those which exhibit the amount of fees *actually collected* by OPA on behalf of Gagne for which she has not been paid her share, less OPA's share under the independent contractor agreement.

Gagne testified that she reconstructed her patient records by referencing her appointment book, which was not offered into evidence. Gagne explained:

I went back through my appointment book which I considered the most accurate listing of the patients I had seen. I went back and I looked at, you know, when they were seen, what the fee was for that time of my work there, and I did, you know — I multiplied it by, you know, however many people were seen at that rate.

Gagne concluded that the total charges submitted to OPA for billing, as reflected in exhibit 17, were $227,060. Prior to payment to Gagne, however, the contract also provided that, subject to certain exceptions for Nebraska medicaid and collected fees in excess of $5,000 per month, OPA was entitled to 30 percent of the fees paid by third parties.

Gagne admitted that some of the appointments on her calendar were "no shows." Gagne also admitted that her calculations assumed that all of her patients paid 100 percent of the amount billed and that she made no adjustments for patients that did not pay 100 percent, for accounts that are uncollectible, for bad debts or bankruptcies, or for patients who had moved and failed to provide OPA with forwarding addresses. Further, Gagne conceded that contrary to her assumptions, not all patients paid 100 percent of the balance due on their accounts.

Gagne also explained that she calculated her "insurance adjustment" from a fixed rate of $85 per hour, the highest rate at which her time was billed while she was at OPA, and that no adjustments were made for the time which she billed at a rate below $85 per hour. Gagne's summary also included an estimate of the percentage of her clients that used each insurance carrier. Implementing an OPA document entitled "Practice Aging Totals," Gagne reduced her submitted charges by $5,994.38, the amount she calculated certain insurance carriers would not remit. Further, Gagne deducted from her total charges submitted an amount that reflected Severa's 30 percent; no evidence was adduced, however, to suggest whether Gagne correctly calculated this figure at only 30 percent or whether other percentages may have been appropriate pursuant to the language in the contract.

Gagne compiled all of the foregoing information into a summary, which was introduced over Severa's objection, as exhibit 17. Exhibit 17 reveals that after Gagne subtracted from her total charges the amount she estimated for an insurance adjustment ($5,994.38), 30 percent for OPA's fee ($66,319.68), and the amount that she claims to have already received from OPA ($139,391.52), the resulting "Amount Owed" was $15,354.42.

The foregoing reveals that Gagne's figures were based, in large part, upon assumptions that were subsequently proved to be inaccurate or incomplete. Gagne's own testimony shows that her calculations were based upon the amount of money she submitted to OPA for billing on her behalf, not the amount of money which was actually collected on her accounts. It is undisputed that the contract between Gagne and Severa entitled Gagne to a percentage of fees actually collected by OPA on her behalf; assuming without deciding that Gagne has proved that Severa breached the independent contractor agreement, we conclude that Gagne has failed to adduce sufficient evidence as to the amount of damages, if any, she suffered as a result of Severa's breach of the contract.

Gagne's evidence notwithstanding, the issue of damages may still have been properly submitted to the jury if evidence adduced by Severa provides a factual basis upon which Gagne's damages may have been calculated with a reasonable degree of certainty. Severa's evidence must therefore be analyzed in order to determine whether the issue was properly submitted to the jury.

Severa introduced numerous exhibits at trial to explain Gagne's accounts, which were introduced primarily via the testimony of Severa's office manager. The office manager testified that she had reviewed all of the records in OPA's possession regarding Gagne's accounts from 1989 to May 1993 and had prepared a spreadsheet which provided a complete overview of the 264 patients that Gagne saw while at OPA. The office manager confirmed the information in the spreadsheet by cross-referencing the information in OPA's records with Gagne's appointment books.

The spreadsheet reveals that $198,513.18 of Gagne's total charges of $222,450 were actually collected. Exhibit 17, com-

piled by Gagne, reflects that Gagne has already received $139,391.52. Thus, the evidence adduced at trial, viewed in a light most favorable to Gagne, suggests the following summary of her account:

| | |
|---|---:|
| Amount received from third parties | $198,513.18 |
| plus transfers | 342.52 |
| | $198,855.70 |
| less refunds for overpayment | 2,412.27 |
| Net amount received | $196,443.43 |
| less OPA's 30-percent fee | 58,933.03 |
| Amount due Gagne | $137,510.40 |
| less payments to Gagne | 139,391.52 |
| Amount owed by OPA to Gagne | ($ 1,881.12) |

Therefore, the evidence, viewed in a light most favorable to Gagne, reveals that OPA does not owe Gagne any money which she has not already received.

Uncertainty as to the fact of whether damages were sustained at all is fatal to recovery, but uncertainty as to the amount is not if the evidence furnishes a reasonably certain factual basis for computation of the probable loss. *Union Ins. Co. v. Land and Sky, Inc.*, 253 Neb. 184, 568 N.W.2d 908 (1997). As previously explained, Gagne has failed to adduce evidence which establishes that OPA has collected any money on Gagne's behalf to which she is entitled after application of the proven credits and payments. The evidence adduced at trial does not establish a reasonably certain factual basis for computation of any loss sustained by Gagne and any such loss calculated by the jury is mere speculation and conjecture. See *id.* Damages need not be proved with mathematical certainty; however, damages cannot be established by evidence which is speculative and conjectural. See, *Snyder v. Contemporary Obstetrics & Gyn.*, 258 Neb. 643, 605 N.W.2d 782 (2000); *Union Ins. Co. v. Land and Sky, Inc., supra.*

It is the duty of the trial court to refrain from submitting to the jury the issue of damages where the evidence is such that it cannot determine that issue without indulging in speculation and conjecture. See *Snyder v. Contemporary Obstetrics & Gyn., supra.* Gagne failed to prove what amount was not properly billed by Severa; what amount was billed, but not properly collected by Severa; or what amount was billed and collected, but

not properly paid to Gagne. As such, the evidence in the instant case left the jury to speculate about what Gagne's actual damages were. As a matter of law, such speculative and conjectural evidence is inadequate to merit submitting the matter to the jury, and the district court should have granted Severa's motion for a directed verdict on this issue.

■ Having so concluded, we need not consider Severa's other assignments of error. An appellate court is not obligated to engage in analysis which is not needed to adjudicate the case and controversy before it. *Brockhaus v. Lambert, ante* p. 160, 608 N.W.2d 588 (2000). Further, our conclusion renders Gagne's cross-appeal moot, and the issues raised therein are also unnecessary to the resolution of this appeal. Consequently, Gagne's cross-appeal must be dismissed.

## CONCLUSION
The district court erred in submitting the issue of damages to the jury, and Severa's motion for a directed verdict at the close of all the evidence should have been sustained. Consequently, the judgment of the district court is reversed, and this cause is remanded with directions to dismiss Gagne's petition.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.
STEPHAN and MILLER-LERMAN, JJ., not participating.