TONIA FALES, PERSONAL REPRESENTATIVE OF THE
ESTATE OF VIRGINIA NORINE, APPELLEE, V.
IRWIN J. NORINE, APPELLANT.

644 N.W.2d 513

Filed May 24, 2002.   No. S-01-349.

John P. Weis, of Sorensen, Zimmerman & Mickey, P.C., for appellant.

Brenda L. Bartels, of Douglas, Kelly, Meade, Ostdiek, Bartels & Neilan, P.C., for appellee.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Following a jury verdict, the district court entered judgment for appellee, Tonia Fales, on two lost promissory notes. Fales is the successor personal representative of the estate of Virginia

Norine (Virginia). The notes were executed by appellant, Irvin J. Norine (Norine), Virginia's son, payable to Virginia.

The district court entered judgment after finding there was sufficient evidence to support the verdict under Neb. U.C.C. § 3-309 (Reissue 2001). That section allows a claimant to enforce a lost, stolen, or destroyed instrument if the person was in possession of the note when the loss occurred and the instrument was not voluntarily transferred or lawfully seized. Under § 3-309(b), the court must also find that the defendant is adequately protected against future claims on the instrument before entering judgment. Further, a court is permitted to provide adequate protection by any reasonable means. The district court restricted payment to Fales on the judgment until January 2003, after the statute of limitations for enforcing the notes had expired.

We affirm the court's judgment that under § 3-309, there was sufficient competent evidence that a jury could reasonably conclude that after Virginia's death, Norine had possession of the notes and had either lost or destroyed them. We modify, however, the court's provision for adequate protection.

## ASSIGNMENTS OF ERROR

Norine assigns that the district court erred in (1) failing to sustain his motion for directed verdict made at the close of all the evidence, (2) finding that Virginia was in possession of the promissory notes at the time of her death and that she was entitled to enforce them, (3) finding that Fales had the right to enforce payment on the notes when she could not account for the loss of the originals, (4) overruling Norine's motion for new trial or judgment notwithstanding the verdict, (5) entering judgment when there is no reasonable means of protecting Norine from the enforcement of the lost promissory notes in question, and (6) entertaining Fales' motion to correct the calculation of interest when it was procedurally inaccurate and untimely filed.

## BACKGROUND

Virginia died intestate on September 7, 1997. She was survived by Norine; another son; and two granddaughters, Fales and Mindy Medina, the daughters of Virginia's predeceased daughter. After Virginia died, Norine was appointed as personal representative of Virginia's estate.

In March 1999, while Norine was the personal representative, he prepared an inventory of Virginia's estate in which he listed as assets two promissory notes dated January 16, 1996, that he had executed payable to Virginia. The first note was in the amount of $67,615.48, plus 8.5 percent interest calculated at $8,877.08. The second note was in the amount of $115,000 plus 8.5 percent interest calculated at $16,042.50. Both notes were payable on January 16, 1998, 2 years from the date they were executed. According to Norine's inventory, the combined total value of the notes plus interest equaled $208,089.88 at the time of Virginia's death. In May 1999, he prepared a proposal for the distribution of Virginia's estate, which also included the notes as assets. Both documents were signed by Norine and filed with the county court.

Norine was removed as personal representative of Virginia's estate for mismanagement of the estate, and Fales was appointed to succeed him in June 2000. Fales then filed suit against Norine to enforce payment of the missing notes under § 3-309. Norine filed a general denial, and the case was tried to a jury.

At trial, during Fales' case in chief, copies of both promissory notes were shown to Norine. He admitted that each was a true and accurate copy of the respective promissory note he had executed on January 16, 1996, payable to Virginia. He admitted that he had signed the notes and had not made any payments on them, and he verified his signatures on the copies. He also admitted that he had testified during a deposition in October 1999 that he had the original notes.

He denied owing money on either note. He stated that the notes were executed to protect his assets from his ex-wife during his divorce, apparently by showing more debt than actually existed. He admitted, however, that Virginia had assisted him in paying a judgment to his ex-wife and that the first promissory note partially reflected the payment Virginia had made to him for the judgment. He was shown a copy of a real estate mortgage to secure both notes, and he admitted that he had executed the mortgage on January 16, 1996. Finally, he was shown a copy of a financing statement and security agreement, which he admitted to signing on February 16. The financing statement secured all of Norine's debts to Virginia with several items of personal

property. He admitted that Virginia had never told him that she was destroying the notes.

On cross-examination by his attorney, Norine stated that Virginia kept her important papers in a cardboard box in a locked room in the basement and that he last saw the box 4 to 5 months before Virginia's death. He stated that Virginia was hospitalized during the last 2 to 3 months of her life and that for 2 to 3 weeks of this time, Medina and Fales lived at the house. Photographs were received into evidence which showed that the lock had been removed from the room in which Virginia kept her papers. He stated that he did not look for the box again until after Virginia died and that he believed the box disappeared during the last 3 weeks Virginia was hospitalized. He stated that he did not know that the originals were missing when he prepared the inventory. Finally, he also stated that he had learned from his son about 3 weeks before trial that Virginia might have destroyed the notes.

Fales testified that she, Medina, and Medina's children had gone to see Virginia while she was in the hospital. They had stayed in a hotel all but one night because the house was not large enough for them all. She denied knowing about the cardboard box or missing lock, and she stated that Norine did not allow her back into the house after Virginia's death. After she was appointed personal representative, she went back to the house to search for the original promissory notes and make inquiries. There was a metal box in the house with titles and loan records, but the originals were not in the box. She obtained copies of the notes from Norine's attorney. She stated that Virginia had told her about making the loan to Norine but had never told her that she had destroyed the notes. Finally, Fales stated that no payments had been made on the notes.

At the close of Fales' testimony, photocopies of both of the promissory notes, the mortgage, and the financing statement were offered into evidence. Norine objected because Fales had failed to show that the documents were not destroyed by Virginia. The court found that Fales was required to show only that the originals could not be produced. The court noted that both Fales and Norine, the only authorized representatives of the estate, had testified that they could not locate the originals. The

court then received the exhibits as evidence of the terms of the promissory notes.

During Norine's case in chief, his son testified that in June 1996, Virginia had told him that the promissory notes were intended only to protect Norine during his divorce. He said that she intended to destroy them because she did not want Norine to have to repay them. He admitted that Virginia had never mentioned the notes again and that he had no confirmation that she had destroyed them.

At the close of the evidence, Norine moved for a directed verdict because the only evidence presented which would account for the disappearance of the notes was Norine's son's testimony that Virginia may have destroyed them. Norine further argued that the burden of proof was on Fales to show that Virginia had not destroyed the notes. He argued that she had failed to prove that the notes were still in existence and could have been enforced by Virginia during her lifetime. Fales also moved for directed verdict because all of the elements to enforce the missing promissory notes had been proved under § 3-309. The court stated that the governing provision of the law was § 3-309. It found that whether Virginia had destroyed the notes was an issue of fact and denied both motions.

The jury returned a verdict against Norine on both causes of action. It awarded the estate $79,598.64 on the first promissory note and $135,380.87 on the second note. On December 21, 2000, Fales filed two motions. The first motion asked the court under § 3-309(b) to postpone entering a judgment in the case until January 26, 2001, at which time—she mistakenly believed—the statute of limitations for enforcing a contract would expire. The second motion asked the court to correct the jury's calculation of interest. Norine filed a motion for new trial or judgment notwithstanding the verdict. He argued that the evidence was insufficient to support a reasonable basis for the jury's verdict. He also argued that using the statute of limitations was insufficient security for him because the notes could be enforced against him later than the time limitations if they were being held by a minor. The court found that there was sufficient evidence to support the verdict. The court also found that it had a duty to correct the interest calculated by the jury, and did so.

Concerning the issue of security, the court commented that the chance of a minor bringing a suit on the notes after the statute of limitations had expired "is just about as likely as the three of us getting knocked dead by lightning right now. And that didn't happen." Because the estate had insufficient funds to cover an indemnification bond, the court rendered judgment in the full amount of principal plus interest but restricted the payment to the estate until the statute of limitations had expired, in January 2003. The court ordered that the judgment be held by the court until that time. In a written order, the motion for new trial was overruled.

## STANDARD OF REVIEW

A civil verdict will not be set aside where evidence is in conflict or where reasonable minds may reach different conclusions or inferences, as it is within the jury's province to decide issues of fact. *Gagne v. Severa*, 259 Neb. 884, 612 N.W.2d 500 (2000). A jury verdict will not be set aside unless clearly wrong, and it is sufficient if any competent evidence is presented to the jury upon which it could find for the successful party. *Id.*

Concerning the overruling of a motion for a directed verdict made at the close of all the evidence, appellate review is controlled by the rule that a directed verdict is proper only where reasonable minds can draw but one conclusion from the evidence, where an issue should be decided as a matter of law. *Id.*

## ANALYSIS

This appeal presents two issues. The first is whether Fales presented sufficient evidence to satisfy the requirements of § 3-309. The second issue is whether the judgment adequately protected Norine against a future claim by a holder in due course of the lost promissory notes.

Norine contends that Fales failed to prove by clear and convincing evidence that (1) Virginia was in possession of the notes and entitled to enforce them when the loss of possession occurred; (2) Virginia did not transfer the notes before her death; and (3) the whereabouts of the notes cannot be reasonably obtained. Fales contends there was sufficient evidence for the jury to find that Virginia was in possession of the notes and had not destroyed them or transferred them before her death. Further, she contends

that the evidence showed that she could not determine the whereabouts of the notes.

In an action to recover upon lost, destroyed, or stolen instruments, a plaintiff must prove the elements of the claim by clear and convincing evidence. *Castellano v. Bitkower*, 216 Neb. 806, 346 N.W.2d 249 (1984). An instrument means a negotiable instrument under Neb. U.C.C. § 3-104(a) (Reissue 2001), which is an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, at a definite time or on demand. See § 3-104(a) (setting forth additional definitions and conditions). The notes were made payable to Virginia at the time they were executed, and Norine promised to pay them 2 years from the date they were executed. They were therefore due on January 16, 1998. There were no conditions placed on the payments, and the parties have not disputed that the instruments were negotiable. Thus, the enforcement of the notes is governed by § 3-309. Section 3-309(a) provides:

> A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

Although one of the stated excuses for the note's absence under § 3-309(a) is the destruction of the note, obviously, the destruction must not be a voluntary act of the payee or the obligation would be discharged. See Neb. U.C.C. § 3-604 (Reissue 2001) (discharge by cancellation or renunciation). In addition to the elements stated in § 3-309, under *Castellano, supra,* a claimant must also prove by clear and convincing evidence "the terms of the instrument." *Id.* at 810, 346 N.W.2d at 252.

Section 3-309 is part of the revised article 3 of the Uniform Commercial Code governing negotiable instruments and was adopted by Nebraska in 1991, operative January 1, 1992. See

Neb. U.C.C. § 3-102, comment 1 (Reissue 2001). It is a modification of the former Neb. U.C.C. § 3-804 (Reissue 1980), intended to clarify that the plaintiff need not satisfy the definition of "owner" to enforce an instrument. See § 3-309, comment.

Section 3-309 was designed to deal with the typical situation of a lost, destroyed, or stolen check or other type of instrument being enforced against the maker by the payee. See 2 James J. White & Robert S. Summers, Uniform Commercial Code § 18-2 (4th ed. 1995). Although § 3-309 does not deal specifically with lost instruments in the context of probate administration, its application in this context is not entirely without precedent. See *Good v. Good*, 72 N.C. App. 312, 324 S.E.2d 43 (1985) (applying article 3, § 804, of Uniform Commercial Code to enforce promissory note made to decedent).

Under Neb. Rev. Stat. § 30-2464(c) (Cum. Supp. 2000), "a personal representative of a decedent domiciled in this state at his or her death has the same standing to sue and be sued . . . as his or her decedent had immediately prior to death." Thus, if a personal representative comes into possession of an instrument made payable to the decedent after his or her death, the personal representative may enforce the instrument on behalf of the estate. If the personal representative loses possession of the note after he or she was entitled to enforce it, then the personal representative may enforce the note under § 3-309 if all of the elements of the claim are proved by clear and convincing evidence.

On the other hand, if a personal representative alleges that the decedent lost possession of an enforceable instrument before the decedent's death, then the personal representative must prove the elements under § 3-309(a), as they relate to the decedent, by clear and convincing evidence.

█ Fales did not allege that the loss of possession occurred while the notes were in Virginia's possession. There was evidence, however, that Virginia did not destroy or transfer the notes before her death because Norine had possession of them after her death. Evidence was also adduced that after Norine was the personal representative and entitled to enforce the notes, neither he nor Fales, after she was appointed his successor, had been able to determine the whereabouts of the notes. Fales was not personally in possession of the notes when the loss occurred. But as the

successor personal representative, she has the same "powers and duties in respect to the continued administration which the former personal representative would have had if his appointment had not been terminated." See Neb. Rev. Stat. § 30-2456 (Reissue 1995). Thus, the right to enforce the notes under § 3-309 transferred to her by operation of law upon her appointment if she proved by clear and convincing evidence that (1) Norine was in possession of the notes and entitled to enforce them when the loss of possession occurred; (2) the loss of possession was not the result of a voluntary transfer by Norine or lawful seizure; and (3) possession of the notes cannot be obtained because they were either destroyed, their whereabouts cannot be determined, or they are in the wrongful possession of an unknown person or a person who cannot be found or is not amenable to service of process.

Norine claims there was insufficient evidence to submit this case to the jury and that the district court erred in failing to direct a verdict in his favor. We disagree.

At trial, Norine admitted that he had testified in an October 1999 deposition that he had possession of the original notes at that time. He also stated that he was mistaken in that belief. But the evidence also showed that he had listed the notes as assets on both the inventory of the estate and the proposed distribution. Both documents were signed by Norine and filed with the county court. In the estate inventory, he certified the notes were part of the "true and complete inventory of the property owned by decedent at the time of her death." This evidence conflicted with Norine's statements that the notes were sham instruments, intended to shield his assets during his divorce. Norine's son testified that Virginia had told him that she intended to destroy the notes because she did not want Norine to have to repay them. Norine's son also stated, however, that he had never seen the notes or heard anything else about them apart from this one comment. Norine also admitted that Virginia had never told him she had destroyed the notes.

■ Conflicting evidence does not mean that the evidence is insufficient to submit to a jury. This court has previously considered the denial of a defendant's motion for a directed verdict in an action to enforce a lost, stolen, or destroyed instrument. We concluded that the denial must be affirmed unless, as a matter of

law, the claimant has failed to prove his or her case by clear and convincing evidence. See *Castellano v. Bitkower*, 216 Neb. 806, 346 N.W.2d 249 (1984). As a general rule, this is a matter best left to the jury's determination based on all the facts, including the credibility of the witnesses. *Id*. See, also, *In re Estate of Brionez*, 8 Neb. App. 913, 603 N.W.2d 688 (2000).

Under these facts, this court cannot conclude as a matter of law that Fales has failed to prove by clear and convincing evidence that Norine was in possession of the notes after Virginia's death. Norine's own admissions, through earlier deposition testimony and submission of the estate's assets and distribution proposal, strongly indicate that he was in possession of the notes after Virginia's death. Although Norine's son testified that Virginia stated she did not intend to enforce the notes, this testimony is contrary to evidence that she secured the notes with a mortgage and financing statement.

The evidence also showed that Norine was Virginia's personal representative and, thus, entitled to enforce the notes after her death despite the fact that he was the maker. He admitted that he had executed and delivered the notes, along with the mortgage and security agreement, and verified that the copies were accurate representations of the notes and that the signatures were his. He stated that he was unable to locate the notes after Virginia's death. But given the evidence showing that he was in possession of the notes, the jury could have reasonably concluded that this testimony indicated that he had either lost the notes after her death or intentionally destroyed them.

The jury was properly instructed that clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proved. See *Castellano, supra*. Under these facts, this court cannot conclude the jury's verdict was clearly wrong.

### DETERMINATION OF ADEQUATE PROTECTION

Section 3-309(b) provides that a "court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument." The comment to

§ 3-309 provides: "The court is given discretion in determining how adequate protection is to be assured. . . . Under section 3-309 adequate protection is a flexible concept. . . . [T]he type of adequate protection that is reasonable in the circumstances may depend on the degree of certainty about the facts in the case."

In this case, by the time the court entered a judgment on the verdict, 5 years had passed since the notes were executed. The court concluded that it was highly unlikely a stranger in possession of the notes would have waited that long to attempt to enforce them. Nonetheless, the court recognized that the notes were negotiable and took the additional precaution of withholding the judgment from Fales until the statute of limitations for enforcing the notes had expired, or January 16, 2003. Given the status of the estate, the court's purported use of the statute of limitations for adequate protection was a reasonable exercise of its discretion. However, contrary to Fales' contention, the applicable statute of limitations for negotiable instruments is not governed by Neb. Rev. Stat. § 25-205 (Reissue 1995). That section imposes a time limitation for actions on a written contract. Under Neb. U.C.C. § 3-118 (Reissue 2001), an action to enforce the obligation of a party to pay a negotiable instrument must be commenced within 6 years of the due date or the accelerated due date stated in the note. We conclude that the judgment should be withheld from Fales until January 16, 2004, or 6 years from the date the notes were due. The court's judgment is corrected to that extent. See *First Const. Co. v. Tri-South Mortg. Investors*, 308 N.W.2d 298 (Minn. 1981) (concluding that trial court erred in failing to extend surety's liability for indemnification bond until statute of limitations for enforcing note had expired).

MOTION TO CALCULATE INTEREST

Although Norine assigns that the court erred in entertaining Fales' motion to correct the calculation of interest in the jury verdict, he did not discuss this assignment in his brief. A claimed prejudicial error must not only be assigned, but must also be discussed in the brief of the asserting party, and an appellate court will not consider assignments of error which are not discussed in the brief. *Kirchner v. Wilson*, 262 Neb. 607, 634 N.W.2d 760 (2001).

## CONCLUSION

The district court did not err in submitting this case to the jury when the evidence was sufficient to create a firm belief or conviction that (1) the loss of possession occurred after Norine had possession of the notes and while he was entitled to enforce them, (2) the loss of possession did not occur because of a transfer or lawful seizure, and (3) neither Norine nor Fales was able to account for the whereabouts of the notes. For the same reason, the court did not err in denying Norine's motion for new trial or judgment notwithstanding the verdict. However, the court erred in its determination of adequate protection for Norine before entering the judgment by failing to use the correct statute of limitations in determining the time that the judgment would be withheld from Fales.

AFFIRMED AS MODIFIED.

WRIGHT, J., not participating.